[Civil Nos. 4380 and 4381. Filed November 24, 1941.]

[119 Pac. (2d) 120.]

SOUTHWESTERN FREIGHT LINES, LTD., a Corporation, and E. L. NORTHCUTT, an Individual, d. b. a. E. L. NORTHCUTT FREIGHT LINES, Appellants, v. ORA MAE FLOYD, by Her Guardian ad Litem, Virgil H. Floyd, Appellee.

SOUTHWESTERN FREIGHT LINES, LTD., a Corporation, and E. L. NORTHCUTT, an Individual, d. b. a. E. L. NORTHCUTT FREIGHT LINES, Appellants, v. NORMA SHAFER, by Her Guardian ad Litem, Berenice Bailey, Appellee.

Messrs. Struckmeyer & Flynn, for Appellants.

Mr. Fred V. Moore and Mr. E. E. Selden, for Appellees.

ROSS, J.—This is an appeal by the defendants, Southwestern Freight Lines, Ltd., and E. L. Northcutt, an individual, doing business as the E. L. Northcutt Freight Lines, from judgments in favor of plaintiffs, Ora Mae Floyd and Norma Shafer, minors, in actions to recover damages suffered by them in a collision between the bicycle on which they were riding and an automobile truck belonging to one of the defendants, which occurred February 28, 1940, at about 6:50 P. M. on the Phoenix-Wickenburg public highway about two miles north of Glendale. There were two actions below but, having arisen out of the same accident, they were consolidated for trial and are consolidated on appeal.

The complaints charge that the concurrent negligence of the defendants caused the injury to plaintiffs. The road where the accident happened is a paved highway, with four lanes separated by white lines. The two lanes on the east side are for northbound traffic and the two on the west side for southbound traffic. It is an open and clear piece of country road. The facts as alleged are as follows: Plaintiff Ora Mae Floyd, who at the time was 12 years of age, was riding as a guest upon the main frame of a bicycle operated by

plaintiff Norma Shafer, who was 16 years of age, and traveling on the right-hand lane of the highway in a northerly direction. The defendant E. L. Northcutt was operating a motor truck in the same traffic lane and in the same direction and was attempting to or was about to pass the bicycle. It is alleged that defendant was following the bicycle directly behind and closer than was reasonably prudent, and thereby frightened the operator of the bicycle, causing her to swerve to the left and to collide with the side of a Dodge tractor truck, belonging to the defendant Southwestern Freight Lines, Ltd., then moving in the adjoining traffic lane and attempting to pass the Northcutt truck, to the great damage of the plaintiffs.

The acts of negligence charged against the Southwestern Freight Lines, Ltd., are: (1) That its Dodge tractor truck was traveling at 45 miles per hour, too great speed with due regard to the traffic on the highway and the width thereof; (2) . . . ; (3) . . . ; (4) . . . ; (5) that the driver of its truck failed to sound his horn or give any audible warning of its approach; (6) . . . ; and (7) that he was towing a semi-trailer and going at a speed in excess of 20 miles per hour, to-wit, a speed of 45 miles per hour. The deleted acts of negligence were abandoned on the trial and plaintiffs undertook to prove only the following acts of negligence:

(1) On the part of E. L. Northcutt, that he was following plaintiffs too closely, considering the traffic, the condition of the highway and the speed at which they were traveling.

(2) On the part of the Southwestern Freight Lines, that its truck was exceeding the speed limit set for trucks of its character; also that it failed to give any audible warning of its intention to pass the Northcutt truck and the bicycle that plaintiffs were on.

At the close of plaintiff's case and at the close of the whole case the defendants made separate motions for directed verdicts on the ground that there was a total failure of proof of any negligence of the defendants. The court's denial thereof and its order denying a motion for a new trial on the same grounds are assigned as errors.

■ It will be necessary to state the evidence, since this specification raises its sufficiency to support the verdicts. On such a motion it is the rule to treat the evidence in the most favorable light to support the verdicts.

It appears that on February 28, 1940, Norma Shafer and Ora Mae Floyd were living with their respective parents in an auto camp on the east side of said highway, also known as Grand Avenue, and that on said day, at about 6:50 P. M., the former borrowed a boy's bicycle and invited Ora Mae to join her in a ride; that they followed a trail on the outside of the paved highway, and on the east side thereof, until they came upon the Northcutt truck parked on that side of the road necessitating their entering upon the paved highway; that they were going north, and had proceeded 75 to 100 feet, when the Northcutt truck started up and followed them; that they, and the truck directly behind them with its lights burning, were in the east traffic lane, the truck traveling 15 miles per hour and the bicycle six to seven miles per hour, three or four feet from the outer edge of the paved highway, and, when the truck was about 15 feet from them, Norma turned to the left, at the time or immediately before saying, "That truck is going to hit us," and ran into the Southwestern truck, at or near the cabin thereof, and they were thrown from the bicycle to the pavement.

The Southwestern truck was towing a semi-trailer and was also traveling northerly in traffic lane No. 2 on the east side of the highway, with its lights burn-

ing. Plaintiffs' evidence is to the effect that this truck was traveling at a speed of 40 to 45 miles per hour and that it did not sound its horn or give any audible notice of its approach.

The Northcutt truck stopped almost immediately, and after the accident was some 15 feet back of where the plaintiffs lay on the pavement.

The Southwestern truck stopped some 30 feet from the point of contact with the bicycle.

The defendant Northcutt insists that the evidence fails to show him guilty of any negligence whatever. It is contended by him that he had his truck in complete control all the time; that he did not touch the bicycle but kept well behind it and that, if the bicyclist through fear turned suddenly into the oncoming truck in traffic lane No. 2 and was hurt, it was not his fault, but her own carelessness.

■■ The statutory rule to be observed by traffic on the public highways of the state, section 66–109, Arizona Code 1939, reads:

"*Giving way to overtaking vehicle—Following too closely.*—The driver of a vehicle about to be overtaken and passed by another vehicle from the rear shall give way to the right in favor of the overtaking vehicle on suitable and audible signal being given by the driver of the overtaking vehicle, and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle. The driver of a motor vehicle shall not follow another vehicle closer than is reasonable and prudent, having due regard to the speed of such vehicles and the traffic upon and condition of the highway. The driver of a motor truck traveling outside of a business or resident district shall not follow another motor truck within one hundred (100) feet, but may overtake and pass another motor truck."

A reasonable and prudent distance between motor vehicles outside of a business or resident district is fixed by law as 100 feet, but the distance to be kept

between motor vehicles and *othr vehicles* in all other places must not be closer than is "reasonable and prudent." This statute recognizes, we think, that there is danger of collision between motor vehicles traveling in the same direction upon the same highway and following each other too closely. However, whether in a given case the statute is violated depends upon several factors, such as the speed the vehicles are traveling, the traffic upon and the condition of the highway. Who is to determine from a consideration of these factors whether, when an accident occurs, it was the result of the driver of the automobile following "closer than is reasonable and prudent," or from some other cause? We think the situation created a condition requiring the jury to say whether the Northcutt truck was following the bicycle closer than was "reasonable and prudent," and that it is not a question of law that may be decided by the court.

■■ That the operator of the bicycle, when she saw or heard the Northcutt truck 15 or 20 feet behind her, should be reasonably expected to continue on her course, unexcited, and take the chance she would not be run down, is hardly in accordance with human experience. One would rather expect her to become panicky and instantly seek some way of escape. That she failed to adopt a safe or the safest course, or to give statutory signals under section 66–111, does not relieve the defendant. It has long been settled that a party having given another reasonable cause for alarm cannot complain that the person so alarmed has not exercised cool presence of mind, and thereby find protection from responsibility for damages. *Greenberg* v. *Conrad,* 220 Ill. App. 508. Nor do we think Norma Shafer's actions in the emergency should be judged by the fact that she was in no danger from the Northcutt truck, which it appears the driver had under complete control and stopped almost immediately when the

bicycle was turned to the left. That she, in fact, was in no danger from the Northcutt truck is not the proper criterion by which to judge her actions. Upon such appearance of danger, she had a right to act as an ordinarily prudent and reasonable person in like circumstances would have acted. 45 C. J. 965, sec. 518.

Now, whether there is evidence of actionable negligence on the part of the Southwestern Freight Lines, Ltd., is the next question. We restate plaintiffs' evidence. It is that the Southwestern Freight Lines, Ltd., was operating a motor truck towing a semi-trailer; that it was traveling in excess of 20 miles per hour and at a speed of 40 to 45 miles per hour and that its driver gave no audible warning with horn or other warning device before passing or attempting to pass the Northcutt truck or the plaintiffs. It is provided in section 66–103:

" . . . It shall be unlawful for the driver of a motor truck towing a trailer or semi-trailer to drive the same at a speed in excess of twenty (20) miles per hour upon any public highway. . . . "

and in section 66–107:

" . . . The driver of any vehicle overtaking another vehicle proceeding in the same direction shall pass at a safe distance to the left thereof, and shall not again drive to the right side of the highway until safely clear of such overtaken vehicle, and when not within a business or residence district shall give audible warning with his horn or other warning device before passing or attempting to pass such vehicle."

The only question is as to the speed of the truck. The plaintiffs' evidence is that the statutory signal for passing was not given and this is corroborated by the testimony of the driver of the Southwestern truck and his helper. These two witnesses say the driver blinked his lights and the helper testified that the Northcutt driver answered such signal. This signal

was not the statutory signal and meant nothing to the operator of the bicycle. It is unquestioned that the Southwestern truck was towing a trailer or semi-trailer. The plaintiff Ora Mae Floyd testified that the Southwestern truck was traveling from 40 to 45 miles per hour. Defendants, however, would have us ignore her testimony as unworthy, if not impossible, of belief. It is said the evidence shows she could not have seen the Southwestern truck for the reason that all the testimony is to the effect that she was sitting on the bicycle, facing east, with her back towards the Southwestern truck, and that she herself swore she saw the truck only "when it was right up on us . . . just a few seconds before the wreck." The fact that plaintiff was facing east is not conclusive that she could not or did not see the Southwestern truck. She might easily have turned her head to the right and seen it. It is true, she admits that she saw it only for a few seconds, but it must be remembered that all this happened in a few seconds. We think it very doubtful, however, whether there was any credible and trustworthy evidence that the speed of the Southwestern truck was 40 or 45 miles per hour. It is questionable in our minds whether the witness, who admits that she saw the oncoming truck only for an instant before the accident, could state with any degree of accuracy the speed of the car. It was nighttime and it is probable she could see only the headlights. But, granting that there was no substantial evidence to support such allegation of statutory negligence, the evidence is uncontroverted that the driver of the Southwestern truck did not give any audible warning that he was about to pass the plaintiffs and the Northcutt truck. This the statute positively made it his duty to do, and the question as to whether such statutory negligence in any way contributed to the accident and injury of the plaintiff was one for the jury.

The accident and consequent injuries suffered by plaintiffs doubtless would not have happened except for the concurring negligence of the defendants. What the driver of the Northcutt truck did in conjunction with what the driver of the Southwestern truck did or failed to do may be said to be the cause of the collision between the Southwestern truck and the bicycle. If by their negligence both defendants contributed to the cause of the injury, they are both liable. In *Mesa City* v. *Lesueur*, 21 Ariz. 532, 190 Pac. 573, 575, we said:

"It is a principle of law, well established by the authorities, that where several proximate causes contribute to an accident, and each is an efficient cause without the operation of which the accident would not have happened, it may be attributed to all or any of the causes, but it cannot be attributed to a cause unless without its operation the accident would not have happened. . . . "

See, also, *Tucson Gas, Electric Light & Power Co.* v. *Doe*, 28 Ariz. 140, 236 Pac. 464; *Buckeye Irrigation Co.* v. *Askren*, 45 Ariz. 566, 46 Pac. (2d) 1068; *Salt River Valley Water Users' Ass'n* v. *Cornum*, 49 Ariz. 1, 63 Pac. (2d) 639. And in 45 Corpus Juris 920, section 485, it is said:

"As a general rule, it may be said that negligence, to render a person liable, need not be the sole cause of an injury. It is sufficient that his negligence, concurring with one or more efficient causes, other than plaintiff's fault, is the proximate cause of the injury. . . ."

The situation the plaintiffs found themselves in was one created by the combined acts of the defendants. It was their concurring acts that gave rise to the emergency plaintiffs were in. Plaintiffs did not give the signals prescribed by section 66–111 before acting, and were not required under the circumstances

to give them. The rule is stated in 45 Corpus Juris 962, section 517, as follows:

*"Conduct in Emergencies—(a) In General.* Conduct which might otherwise constitute negligence may not be so considered where the acts or omissions of the person injured occurred in the presence or under a reasonably well founded apprehension of impending danger, or in an emergency such as is calculated to produce fright, excitement, or bewilderment and affect the judgment. The rule is well established that, when one is required to act suddenly and in the face of imminent danger, he is not required to act as if he had time for deliberation and the full exercise of his judgment and reasoning faculties. It has been asserted, that this is especially true where the peril has been caused by the fault of another. Ordinary care to avoid injury is all that is required. The test is, did he act as a reasonably prudent man would have acted under the same or similar circumstances. . . . "

See, also, *Mortensen* v. *Fairbanks,* 1 Cal. (2d) 489, 35 Pac. (2d) 1030.

It is objected that the statement testified to by Ora Mae Floyd as having been made by Norma Shafer just before the accident, that is, that "That truck is going to hit us," is hearsay and self-serving and should not have been admitted over defendants' objections. It was admitted by the court as a part of the *res gestae.* After the objection to its admission was made and overruled, interrogation of the witness continued as follows:

*"Mr. Moore:* Go ahead, Ora Mae.

"A. And Norma Shafer said 'That truck is going to hit us,' and she pulled into the center of the road, and just as we got to the second lane this other truck came around and hit us.

*"Mr. Moore.* Q. Well, how long after she made this statement were you struck? A. Oh, about forty-five seconds, maybe a little longer, maybe a minute.

"Q. Well, immediately after, or what I am getting at is, after she had made this statement that the truck

would hit you how soon did she turn? A. Oh, just when she said that.

"Q. She turned right then? A. Yes.

"Q. Now, did you state that just as you came into the center lane 'this other truck hit us'? Was that your statement, Ora? A. Yes."

It seems quite clear the statement was not premeditated or thought of in advance but was spontaneous and made under the excitement of the moment. There are two cases in Arizona holding that statements made under similar circumstances should be admitted as part of the *res gestae*. In *Benton* v. *Regeser,* 20 Ariz. 273, 179 Pac. 966, 968, it was held that a statement, in the nature of an admission, made immediately after the accident, was properly admitted. In that case we said:

" . . . The weight of authorities, however, inclines toward leaving the question of admissibility of this class of testimony in a great measure to the discretion of the trial court. The facts are before him, and he has a better opportunity to determine whether testimony of this character is in fact a part of the things done, a part of the *res gestae,* than an appellate court. [Citing cases.]"

In *Pickwick Stages Corporation* v. *Williams,* 36 Ariz. 520, 287 Pac. 440, 442, the statement of the driver of the Pickwick bus, made immediately after the accident was: "I am to blame for this; I am sorry." Passing upon the admissibility of this statement, we said:

"The time element is always important in determining whether a statement or declaration should be admitted in evidence as a part of the *res gestae,* but it is not controlling. It need not be at the identical instant of the main occurrence any more than it is necessary that it be at the same place. Spontaneity is of more importance than either. It is said in 22 Corpus Juris, 461, § 549: 'In order for a declaration to be admissible as a part of the *res gestae,* it must be the spontaneous utterance of the mind while under the influence of the

transaction, the test being, it has been said, whether the declaration was the facts talking through the party, or the party talking about the facts. The guaranty for truth is found in such a correlation between the statement and the fact of which it forms part as strongly tends to negative the suggestion of fabrication or invention, and a suspicion of afterthought will prevent the reception of the statement.' ''

It appears to us under the decisions of this court that the statement was properly admitted as a part of the *res gestae*.

It is also claimed that it was error to let Ora Mae Floyd testify as to the speed of the Southwestern truck. Before she was permitted to give her estimate of such speed, she testified that her father had a car; that she rode with him often; that she watched the speedometer; and that she could look at a moving automobile and estimate close to its speed although she had never driven a car. We judge from her testimony that the witness was above the average intelligence of girls of her age. The court in passing upon her competency said: "I think she is competent. . . . The weight of the testimony is a question for the jury." Under the prevailing rule, she was competent to testify as to the speed of the Southwestern truck. One does not have to be an expert to estimate speed. 5 Am. Jur. 860, sec. 651.

From here on the errors assigned by defendants affect only Norma Shafer's right to recover. Doctor Norman Hall testified and described the injury sustained by Norma as being a depressed fracture of the skull. He said:

" . . . we did what is called a decompression, we removed a piece of bone about an inch and one quarter by three-quarters of an inch wide, at least we left a space of that size."

He was then asked "the usual and reasonable after results" of an injury of that kind, to which he gave answer as follows:

"The effects that might happen after an injury of this kind are several: a patient may develop what is called traumatic epilepsy, that it, it may take months or years to develop afterwards. Naturally, after an operation like this or an accident, there has been injury to the brain. That brain has to heal just like any other part of the body by scar tissue. If you happen to have scar tissue develop over certain areas of the brain you might at a later date have epilepsy. Another thing that often happens is severe headaches. Another thing that might happen is personality changes, I mean a person's memory may become different, they may be different a lot of ways. I think those are the three main things that might happen."

Counsel for defendants moved that such answer be stricken on the ground that "it is loaded with possibilities that might happen," which motion was denied. The ruling is assigned as error. It is contended that it is speculative, remote and conjectural and not confined to the actual injuries allegedly sustained by plaintiff. That the doctor's answer was not of the character charged is well demonstrated by the actual results in plaintiff's case. After her injury it is shown she lost her memory to the extent that she could not remember anything of the accident and that she had a change of personality and for a short time headaches—the things the doctor stated might occur and in fact did occur. Opinion evidence by its very nature is not fact evidence. It is what the expert witness from his knowledge, experience and research may reasonably expect to result from certain antecedent happenings or occurrences or conditions. That a doctor refuses to state positively the results of an injury upon the life of the injured person, but, rather, chooses to prognosticate the possibilities of such injury, does not weaken its

worth or reliability, but commends it. In this case the answer of the doctor shows he was not speculating or conjecturing, for what he said was possible actually happened. If the answer was a little broader than the question, it did not and could not harm defendants.

■ It is next claimed that the evidence of the result of the injury upon the life of Norma Shafer should have been withdrawn from the jury on the defendants' motion, because it affirmatively appeared that, eleven months prior thereto, she had been in an automobile accident and sustained a head injury. The evidence as to the previous injury and its effect on Norma is entirely negative. She herself testified that she had suffered a head injury and that she was confined to a hospital for three days; that she was in good health and in normal condition thereafter and prior to her injury on February 28, 1940. Her mother, Berenice Bailey, testified that prior to this last date "Norma was a very bright girl and very healthy." Since that date, the mother says:

"One thing I noticed particularly is that she isn't herself. Physically she seems strong and healthy and she eats well, but she has periods of forgetfulness, lapses of memory you might call them. Sometimes they will last for a few seconds and only once or twice a day and then she will go several days without them. Again she is very bad for several days at a time.

"Q. Is (not) the same child that she was before the accident? A. Not the same as she was before, nothing like it."

We think the motion to withdraw the testimony of Doctor Hall was properly denied. If there was any evidence of changed personality or loss of memory from the former head injury (but there was none), it would go only to the weight to be given to the doctor's testimony; it would not affect its admissibility.

■■ The defendants requested an instruction on the duty of Norma Shafer to keep a proper lookout

for other vehicles on the public highway. We think it stated the law clearly, but we do not agree with defendants that the court erred in refusing to give it. The court may refuse an instruction absolutely flawless on the ground that the fact situation it governs is incorporated in another instruction. We believe the court fully advised the jury that, if Norma Shafer failed to use her faculties in a reasonable way and her negligence contributed in any way to the accident, she should not recover. The court did not say, in so many words, that it was her duty to keep a proper lookout, but used equivalent language, not once, but many times.

Defendants submitted an instruction incorporating the statutory law as contained in section 66–137 and the court's refusal to give such instruction is assigned as error. Such section, so far as material, reads:

"Every vehicle upon a highway, during the period from a half hour after sunset to a half hour before sunrise and at any other time when there is not sufficient light to render clearly discernible any person on the highway at a distance of two hundred (200) feet ahead, shall use lighted front and rear lamps as follows:

. . . . . . . . . .

"Every bicycle shall be equipped with a lighted lamp on the front thereof visible under normal atmospheric conditions for at least three hundred (300) feet in front of such bicycle and shall also be equipped with a reflex mirror or lamp on the rear exhibiting a red light visible under like conditions and distance to the rear of such bicycle."

The requested instruction is in the words of the quoted statute. The plaintiff Shafer insists that the court properly refused the instruction because the evidence failed to show that the accident happened at the hours mentioned, or that a person could not be clearly discerned for 200 feet ahead at the time of the accident. On February 28, 1940, we officially take notice,

the sun set at 6:24. Three witnesses testified that the accident occurred about 6:30 and one witness testified that it occurred between 6:30 and 7 P. M. If when it happened it was not thirty minutes after sunset, or 6:54, or if a person could be clearly discerned for 200 feet ahead, the instruction had no place in the case as there is no sufficient showing that either condition existed.

The failure of the plaintiff Norma Shafer to have her bicycle equipped with the statutory lights was negligence and, if there is any evidence whatsoever tending to show that such negligence in any way contributed to the accident and to her injury, it was error to fail to give such instruction, providing the accident was at an hour when the lights were required or the condition of the atmosphere was such as to prevent one from seeing a person clearly 200 feet ahead. There is no suggestion that the accident would not have happened just as it did if the bicycle had been legally equipped with lights.

The complaint as to the size of the judgment we consider is not well taken. In each case it was $5,000. No reason is assigned against the size of the judgment for Ora Mae Floyd; it is simply suggested that it is excessive. The injuries sustained by Norma Shafer, as we have shown, were very severe and we do not think the judgment in her favor is excessive.

The instructions seem to be very complete and to cover every phase of the case. We have noticed some of those criticized but not all, for to do so would extend this opinion unnecessarily. On the whole the instructions were fair.

The judgments of the lower court are affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.