ROBERT G. WEBB, ADMINISTRATOR OF THE ESTATE OF JAMES ROBERT BUNN, II v. EDWARD WILLIAMS FELTON AND CAROLINA COACH COMPANY.

(Filed 23 March, 1966.)

**1. Automobiles § 41d—**

The failure of a bus driver to blow his horn in apt time before attempting to pass a boy on a bicycle, who was obviously unaware of the overtaking vehicle, is evidence of negligence. G.S. 20-149(b).

**2. Negligence § 26—**

Nonsuit on the ground of contributory negligence may be allowed only when plaintiff's evidence, taken in the light most favorable to him, so clearly establishes defendant's affirmative defense that no other reasonable inference or conclusion can be drawn from it.

**3. Automobiles § 32—**

The operation of a bicycle upon a public highway is governed by the rules governing motor vehicles insofar as the nature of the vehicle permits. G.S. 20-38(ff).

**4. Same—**

Ordinarily, a bicyclist, before turning from a direct line of travel, is under duty to ascertain that the movement can be made in safety, and to signal his intention to do so when other vehicles may be affected.

**5. Automobiles § 42h—**

Evidence permitting the inference that defendant's bus was traveling downhill with its motor idling, that a boy on a bicycle, traveling in the same direction, was on his right side of the road, apparently oblivious of the bus behind him, that the bus driver veered to his left, and as the bus came nearly abreast, pressed hard on the accelerator in attempting to pass the bicycle, and that the bicyclist, upon hearing the sudden noise close behind him, reflexively turned left, *held*, in the aggregate to disclose a situation constituting an emergency, and the act of the bicyclist in so turning without signal into the path of the bus does not constitute contributory negligence as a matter of law.

MOORE, J., not sitting.

APPEAL by plaintiff from *Bundy, J.*, October 1965 Civil Session of WILSON.

Action for wrongful death.

These facts are admitted in the pleadings: Robert Bunn, II (Robert), died about 4:35 p.m. on June 4, 1964, as the result of a collision between the bicycle he was riding and a bus owned by defendant Carolina Coach Company and operated by defendant Felton in the course and scope of his employment by defendant Coach Company. Both bus and bicycle were proceeding south on U. S. Highway 301. At the place of collision, half a mile south of Kenly, the highway is a two-lane asphalt road, approximately 20 feet wide, which runs generally north and south. There is a slight hill about 300 yards north of the point of collision and another about 300 yards south of the point of collision. Between the crests of the two hills the highway is straight.

Plaintiff alleges that the bus-bicycle collision and the resulting death of plaintiff's intestate were proximately caused by the negligence of defendants in that, *inter alia*, Felton failed to drive the bus to the left side of the highway and to pass at least two feet to

the left of the bicycle; that he failed to keep a proper lookout; and that, having failed to give any audible warning of his intention to pass, he suddenly accelerated the bus, causing its engine to roar, just as he attempted to go around the bicycle. Defendants deny these allegations and aver that Robert, who had been riding near the right edge of the pavement, suddenly and without warning turned to his left directly across the path of the bus and into the northbound lane of the highway.

The evidence, taken in the light most favorable to plaintiff, tends to establish these facts: June 4, 1964, was a clear, warm day. As the bus topped the northern hill, the driver and some of his passengers saw Robert, aged 15, riding his bicycle on the right-hand side of the road about two feet from the edge of the asphalt. He was then about halfway down the hill. An automobile traveling north was near the bottom of the southern hill. Although the bus was rapidly overtaking the bicycle, the driver never sounded his horn to signal his intention to pass the boy. As it traveled downhill, the bus engine "idled" smoothly and made very little noise. When the driver was only 10-20 feet behind Robert, he "mashed down on the accelerator" — "showered down on it"; the engine "roared out-loud," and Felton turned the bus "astraddle the center line." (The northbound car had passed.) Up to that time Robert had continued on the course in which he was first observed; he had never looked back, nor had he given any signal of his intention to turn left. When "the bus roared," Robert cut to his left. The bus driver applied brakes about the time he hit the boy. The impact occurred some distance north of a dirt road which intersects No. 301 near the bottom of the hill, 600 feet south of the north crest.

When the investigating officer arrived, he found Robert's body lying in the middle of the dirt road, 10-12 feet east of the pavement. The bicycle was on the east shoulder, 6-8 feet north of the dirt road. In the center of the highway, 40-50 feet north of this road and about 75 feet from the body (and 35-40 feet from the bicycle) was broken glass from the left headlight of the bus. There were no marks on the highway. Defendant Felton told the patrolman that as he came over the hillcrest he saw the boy operating his bicycle near the edge of the pavement; that he moved his bus "over toward the center of the road" to avoid striking him; and that the boy then cut across in front of the bus. Felton did not tell the patrolman that he ever blew his horn.

The area was a 55 MPH speed zone; the bus was traveling about 45 MPH when it crested the hill. Robert was an intelligent, healthy young man who did well in school. He would soon have been an Eagle Scout.

At the close of plaintiff's evidence, defendants moved for a judgment of nonsuit. The motion was allowed, and plaintiff appealed.

*Wiley L. Lane, Jr., and Gardner, Connor & Lee for plaintiff appellant.*
*William L. Thorp, Jr., for defendant appellees.*

SHARP, J. The failure of the bus driver to blow his horn in apt time before attempting to pass the boy on his bicycle — a boy who had not looked back from the time the bus driver had first sighted him 150 yards ahead — was a violation of G.S. 20-149(b), and evidence of negligence. *Tallent v. Talbert,* 249 N.C. 149, 105 S.E. 2d 426. Defendants concede that the trial judge allowed their motion for nonsuit upon the theory that Robert was guilty of contributory negligence *per se* in that, without giving any signal of his intention to do so, he veered suddenly from a direct line of travel when such a movement could not be made in safety. G.S. 20-154.

Nonsuit on the ground of contributory negligence may be allowed only when a plaintiff's evidence, taken in the light most favorable to him, so clearly establishes the defendant's affirmative defense that no other reasonable inference or conclusion can be drawn from it. 4 Strong, N. C. Index, Negligence § 26 (1961). Do the circumstances disclosed by plaintiff's evidence establish thus conclusively that Robert was guilty of a violation of G.S. 20-154, and that such violation was a proximate cause of the collision which resulted in his death? The answer is No.

Except as to those provisions which by their nature can have no application, the operation of a bicycle upon a public highway is governed by the rules of the road applicable to motor vehicles. G.S. 20-38(FF); *Harris v. Davis,* 244 N.C. 579, 94 S.E. 2d 649; *Tarrant v. Bottling Co.,* 221 N.C. 390, 20 S.E. 2d 565. Therefore, under ordinary circumstances, it is the duty of a bicyclist, before turning from a direct line of travel, to ascertain that the movement can be made in safety, and to signal his intention to make the movement if the operation of any other vehicle will be thereby affected. The evidence here is susceptible to the following inferences: (1) Robert was oblivious to the bus behind him; (2) the bus driver should have realized this; (3) Robert had not intended to turn from his line of travel; and (4) his movement to the left was an involuntary one, caused by the unexpected and startling noise of an accelerating motor 10-20 feet behind him. In the aggregate, these are emergency, not ordinary, circumstances.

In *Southwestern Freight Lines v. Floyd,* 58 Ariz. 249, 119 P. 2d 120, plaintiff *F,* a 12-year-old girl, was riding as a guest on a bi-

cycle being operated at dusk by plaintiff *S*, a 16-year-old girl, in the outside lane for northbound traffic on a four-lane highway. They came upon the parked truck of defendant *N* and passed it. After they had proceeded 75-100 feet, the truck started up and followed directly behind them with its lights burning. When the truck was 15 feet behind them, *S* said, "That truck is going to hit us." She turned to the left, toward the inside lane, and ran into the truck of defendant *SW*, which was in the act of passing *N*. Defendant *SW*'s truck had given no audible notice of its approach. Both plaintiffs recovered judgment against both defendants. In sustaining the recovery, the Arizona court said:

> "That the operator of the bicycle, when she saw or heard the Northcutt truck 15 or 20 feet behind her, should be reasonably expected to continue on her course, unexcited, and take the chance she would not be run down, is hardly in accordance with human experience. One would rather expect her to become panicky and instantly seek some way of escape. That she failed to adopt a safe or the safest course, or to give statutory signals under section 66-111, does not relieve the defendant. It has long been settled that a party having given another reasonable cause for alarm cannot complain that the person so alarmed has not exercised cool presence of mind, and thereby find protection from responsibility for damages." *Id.* at 257, 119 P. 2d at 124.

*Greenberg v. Conrad,* 220 Ill. App. 508, was a case in which the plaintiff's intestate Thomsen, an adult riding a bicycle on a street in Waukegan, was struck from behind and killed by the defendant's automobile. Evidence for the plaintiff tended to show that the defendant first sounded his "gong" when the automobile was just upon Thomsen and his bicycle, at which time the defendant "speeded up." Thomsen turned to the left and was run down. In sustaining a judgment for the plaintiff, the court said:

> "It is clear from all the evidence that Thomsen first learned of the approach of this automobile behind him when the gong first sounded when the automobile was right upon him. . . . 'It has long been settled, that a party having given another reasonable cause for alarm cannot complain that the person so alarmed has not exercised cool presence of mind, and thereby find protection from responsibility from damages resulting from the alarm.' . . . We are of opinion that the evidence warranted the jury in finding that the rule is applicable to the facts in this case, and that it was a question of fact for the jury whether Thomsen was acting with due care under the circumstances of

the sudden danger which confronted him, and that the jury were warranted in finding that he was not guilty of contributory negligence." *Id.* at 512-13.

As defendant Felton approached Robert on his bicycle, "a special hazard" existed. Felton might reasonably have apprehended that the bicyclist was oblivious of his approach and that he might be startled into involuntary action by a sudden and frightening noise behind him. It was, therefore, both Felton's common-law and statutory duty to use due care not to endanger him. G.S. 20-140; G.S. 20-141(c); G.S. 20-174(e); G.S. 20-149; *Williams v. Henderson,* 230 N.C. 707, 55 S.E. 2d 462; *Tarrant v. Bottling Co., supra.* One of those duties was to signal his approach in time to afford Robert a reasonable opportunity to avoid the danger from the passing bus. "This warning signal must be given to the driver of the vehicle in front in reasonable time to avoid injury which would probably result from a left turn or a crossing over the center of the highway to the left by the vehicle in front." *Boykin v. Bissette,* 260 N.C. 295, 298, 132 S.E. 2d 616, 619. In the absence of such warning, knowledge that he is about to be passed may not be ascribed to the operator of the forward vehicle. *Lyerly v. Griffin,* 237 N.C. 686, 75 S.E. 2d 730. The fact that the engine of the overtaking vehicle is noisy, or even that it is carrying a rattling load, will not relieve a driver of his duty to give in apt time the warning required by statute. *Devcchio v. Ricketts,* 66 Cal. App. 334, 226 Pac. 11; 60 C.J.S., Motor Vehicles § 326(c) (1949).

We hold that plaintiff offered plenary evidence of defendants' actionable negligence and that it was for the jury to say whether Robert was guilty of negligence which was a proximate cause of his tragic death.

The judgment of nonsuit is
Reversed.

MOORE, J., not sitting.