402 P.2d 432

Hugh GRIFFEN, and Style Crest Furniture Manufacturing Company, a corporation, Appellants,

v.

James Lewis STEVENSON, Appellee.*

I CA–CIV 31.

Court of Appeals of Arizona.

May 28, 1965.

Review Denied Oct. 13, 1965.

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 7627. This matter was referred to this Court pursuant to Section 12–120.23, A.R.S.

**312**

McKesson, Renaud & Cook, by J. Gordon Cook, Phoenix, for appellants.

Moore & Romley, by Philip A. Robbins, Phoenix, for appellee.

DONOFRIO, Judge.

This is an appeal by Hugh Griffen and Style Crest Furniture Manufacturing Co., a corp., defendants, from a verdict and judgment thereon in favor of the plaintiff, James Louis Stevenson, for damages for personal injuries. The parties will hereafter be referred to as they were in the trial court.

Plaintiff received the personal injuries in an automobile accident with a tractor and trailer driven by defendant, Griffen, in the course and scope of his employment by defendant, Style Crest Furniture Manufacturing Company. Plaintiff was awarded a jury verdict in the amount of $10,000.

The court properly stating the law, instructed the jury on the issue of future medical expenses and future loss of wages. The sole question is whether there was legally sufficient evidence of the necessity for a future operation to relieve a condition in plaintiff's lower right arm and hand to justify instructing the jury that they may consider future medical expenses and loss of wages.

■ The general law applicable about which there seems to be no disagreement can be stated as follows: Damages for future medical expenses and future loss of earnings in connection with a specific surgical procedure may be recovered where the evidence supports a finding that it is reasonably probable or certain that such surgery will be performed in the future, and where the amount of such future damages has been established with reasonable certainty. Consolidated Arizona Smelting Co. v. Egich, 22 Ariz. 543, 199 P. 132 (1920); Coppinger v. Broderick, 37 Ariz. 473, 295 P. 780, 81 A.L.R. 419 (1931); Southwestern Freight Lines Ltd. v. Floyd, 58 Ariz. 249, 119 P.2d 120 (1941); Henderson v. Breesman, 77 Ariz. 256, 269 P.2d 1059 (1954); Town and Country Securities Co. v. Place, 79 Ariz. 122, 285 P.2d 165 (1955).

As a result of the accident which occurred October 19, 1959, plaintiff received serious bodily injuries for which he was hospitalized nine days. He had been employed by Reynolds Metals about twelve years and approximately five weeks after leaving the hospital he returned to his work. With the exception of a week in December

of that year, when on the advice of his doctor he was laid off work, he has been on the job ever since.

At times he had difficulty in performing many of his tasks due to his ailments. He suffered several ill effects as a result of the accident, however, on this appeal we shall concern ourselves only with those pertaining to the issue involved herein.

Plaintiff complained after the accident that he had pain in his right arm. That during the two years prior to the trial he continued to have difficulty with his right shoulder, arm and hand. This included pain, sensation of swelling, numbness and difficulty in using the shoulder, arm and hand. A few months prior to trial he consulted Dr. Hoffman, a neurological surgeon who performed an extensive examination on plaintiff and diagnosed his condition as a minor vasomotor dystrophy. Dr. Hoffman had also seen plaintiff in the hospital at the time of the accident. During the time of the examination plaintiff was also suffering from a hernia which was a non-accident condition.

The key testimony relating to the sole issue involved is the testimony of Dr. Hoffman on the question of a future surgical procedure to relieve the vasomotor dystrophy. This operation according to the doctor is based upon interrupting the sympathetic nervous system which supplied the involved area of the hand and upper extremity. It is performed over the clavicle or through the back by traversing or cutting through muscle planes and retracting blood vessels to gain access to the sympathetic nervous system. The particular nerves involved are identified and explored and then cut and removed to improve the patient's circulation and afford relief of any reflex sympathetic discomfort which he may have. The doctor explained that there are side effects to the operation, and these are the patient's responsibility to understand before he decides on the surgical procedure. Some of the side effects were that the patient would have a dry hand. That one side of his face would

be dry and not perspire. That he may, at least one in eight, have a permanent dropping of the eyelid. Other discomforts were described.

Regarding the surgery the doctor testified:

"the patient's complaints at this time are able to be relieved by medical means. However, he has a more disabling condition as I see him than this vasomotor dystrophy. So that this would take precedent over anything that I would plan from a surgical nature."

The doctor was then asked whether or not surgery would be warranted assuming the hernia which was described as a "major difficulty" was corrected, and he answered:

"An individual may have pain from two sources, as an example: a kick in the shin and a cut on the lip. Both are painful or discomforting.

"If one is corrected, the other one then becomes the major complaint.

"Now, then, taking this particular case in evidence, *if* the patient's arm still remains in a discomforting and a disabling condition, then I would consent to *consider* him for a surgical procedure to attempt to correct the discomfort which he is having. He would have to be fully cognizant of the shortcomings of the surgical procedure." (Emphasis supplied).

■ The question now is whether under this evidence it is reasonably probable that such surgery will be performed in the future. We think that it is not. To begin, the doctor prefaces his opinion that after the hernia operation *if* the patient's arm still remains in a discomforting and disabling condition he would consent to *consider* him for surgery, and in addition thereto would first require the patient to elect to have the surgery performed.

On this latter point we have searched the record and cannot find any evidence that the plaintiff contemplated having the surgery. The closest to the subject was the

following answer which was made by the doctor after being asked if the patient had improved between visits and was the reason for not recommending surgery:

"A Specifically, my notes reveal that he had improved sufficiently having talked, in addition, to his attending physician, Dr. Robert Stump, and he feels that he can safely put off any surgical consideration of the arm for the time being. He prefers his hernia be fixed first, which is his major difficulty in work in addition to the arm and also bad feet."

We cannot see where this can be construed as evidence that plaintiff would elect to have the operation.

The doctor in testifying about the future operation did not say that the complaints would warrant surgery but stated that the plaintiff's complaints were at the time able to be relieved by medical means and that he didn't believe they were disabling him to the degree that surgery would be warranted at the time. It is well to note also, that there is no testimony that plaintiff's condition would or might increase or worsen in the future.

The only other doctor who testified concerning the matter was Dr. Steelman who testified on behalf of the defense. He found no vasomotor dystrophy nor any accident connected difficulty.

In Henderson v. Breesman (supra) our Supreme Court at page 259 of the Arizona Reports at page 1061 of 269 P.2d, stated:

"We are unable, however, to find any evidence that would authorize the jury to consider future medical expenses or permanent impairment of earning capacity. The mere fact alone that there may be some permanency to the injury is not enough. This court is committed to the proposition that the jury cannot be allowed to speculate or guess in making allowance for future medical expenses; there must be some data furnished the jury upon which it might reasonably estimate the amount to be allowed for this item. Consoli-

dated Arizona Smelting Co. v. Egich, 22 Ariz. 543, 199 P. 132; 25 C.J.S., Damages, § 162b(5), page 829. Of course, at best it is a mere estimate and cannot be determined with accuracy, but there must be some evidence to authorize the estimate. *The jury cannot be left to guess the probable nature of future treatment* or the probable expense thereof." (Emphasis supplied).

Our Supreme Court has clearly stated the rule we must follow. In the instant appeal we are not concerned with the certainty of the expenses of the operation as the doctor testified the fee for such an operation would be $500; the cost of hospitalization would be in the neighborhood of $650 to $750; and after three weeks following the hospitalization plaintiff could return to light work. As to plaintiff's wages he testified he made $130 per week. We are only dealing with the probability or reasonable certainty of the need for the operation itself and the probability or reasonable certainty of its being performed in the future. Future pain and suffering of the discomfort or condition is not involved as no objection has been made to this aspect of the case.

We have found no Arizona case precisely in point, however, in Condron v. Harl, 46 Haw. 66, 374 P.2d 613, dealing with a similar issue the Supreme Court of Hawaii said:

"The testimony was to the effect that plaintiff, on medical advice, was seeking to live with his disability, rather than to be operated upon. Surgery, it was testified, was an alternative to be considered 'at such time as he felt that living with it was too burdensome.' There was insufficient evidence to show with reasonable certainty that plaintiff's condition would, in future, call for an operation. Accordingly it was error to submit to the jury the matter of an award for the expenses incident thereto. Chicago, R. I. & G. Ry., v. Swan, 130 S.W.

855 (Tex.Civ.App.); Missouri, K. & T. Ry. v. Flood, 70 S.W. 331 (Tex.Civ. App.); Davis v. Midwest Dairy Products Corp., 58 So.2d 741 (La.App.); Rodriguez v. Gerontas Compania De Navegacion, 150 F.Supp. 715, 720 (S.D. N.Y.), aff'd, 256 F.2d 582 (2d Cir.); Consolidated Arizona Smelting Co. v. Egich, 22 Ariz. 543, 199 P. 132; Holahan v. McGrew, 111 Cal.App. 430, 295 P. 1054; Annot., 69 A.L.R.2d 1261, 1273. For the same reason, it was error to admit evidence as to the cost of the operation over defendant's objection thereto, as set out in Specification of Error No. 8." 374 P.2d 619.

We hold that there is not legally sufficient evidence to permit the jury to be instructed as to future medical expenses and loss of wages necessitated by such operation for the reason it is highly speculative and conjectural.

■ It is impossible to tell to what extent a verdict may have been affected by the submission of this issue. Consequently, we cannot say that the jury was not prejudiced, however, this court under A.R.S. § 12–2104 has power to order that if a party who has recovered damages shall, within such time as the court may fix, file a remittitur from the judgment of the amount which the court deems excessive, the judgment as to the remainder shall be affirmed, otherwise reversed and a new trial ordered.

■ Inasmuch as the costs of the operation and loss of wages can be ascertained with a reasonable degree of certainty, and inasmuch as it would appear that after deducting this amount the judgment would be fair we are persuaded to hold that it is reasonable to assume the verdict herein is excessive in the amount of the special damages erroneously submitted for the jury's consideration, now therefore, it is ordered that if plaintiff file a remittitur from the judgment in the amount of $1,640.-

00 on or before June 28, 1965, the judgment as to the remainder in the sum of $8,360.00, together with interest at the rate of 6% per annum from November 1, 1961, will be affirmed, otherwise the cause is reversed and remanded for a new trial.

It is further ordered suspending the rules regarding motions for rehearing and allowing plaintiff 15 days from and after the date specified for the filing of a remittitur to file a motion for rehearing.

STEVENS, C. J., and C. EDWIN THURSTON, Superior Court Judge, concur.

NOTE: Judge James Duke Cameron having requested that he be relieved from consideration of this matter, Judge C. Edwin Thurston was called to sit in his stead and participate in the determination of this decision.