447 P.2d 580

Ralph Eugene **CHARRON**, Appellant,

v.

Kathleen Ann **KERNAN**, Appellee.

No. I CA–CIV 701.

Court of Appeals of Arizona.

Dec. 2, 1968.

Rehearing Denied Dec. 20, 1968.

Review Denied Feb. 11, 1969.

Herbert Mallamo, Phoenix, for appellant.
Gerald F. Sullivan, Phoenix, for appellee.

CAMERON, Chief Judge.

This is an appeal from a jury verdict and judgment in favor of the plaintiff, Kathleen Ann Kernan, appellee herein, against the defendant-appellant and from the denial of defendant's motion for new trial.

We are called upon to determine:

1. Whether the court's instructions concerning permanent injuries and plaintiff's counsel's argument to the jury as to future medical expenses constituted reversible error.

2. Whether the failure to instruct the jury as to the definition of "proximate cause" was a fundamental and reversible error.

Plaintiff was injured in an automobile accident in which the defendant, Charron, was the driver of the other vehicle. The evidence viewed in a light most favorable to sustaining the verdict, Mahurin v. Schmeck, 95 Ariz. 333, 390 P.2d 576 (1964); Whitly v. Moore, 5 Ariz.App. 369, 427 P.2d 350 (1967), indicates that the defendant, south bound on Rural Road in Tempe, Arizona, intended to stop on the right side of the road when he observed a "no park-

ing" sign and realizing he could not park, proceeded to change lanes in order to make a left turn. He testified he did not see the plaintiff until plaintiff's car hit defendant's car on the left rear side and the left rear. Plaintiff was also proceeding south on Rural Road and testified as follows regarding defendant:

"Q After you made your left on South Rural Road, what did you observe, if anything?

"A After I made the left-hand turn I noticed there was a car on the right-hand side in a stopped position.

*　　*　　*　　*　　*　　*

"Q * * * And what's the next thing you observed, or what did you do after you saw this car parked on the right-hand side of the road, or stopped?

"A Well, I kept driving. About the time I shifted into second gear, he had pulled out of that lane and was in front of me. * * * He was moving, but there he was suddenly in front of me also. * * * I slammed on the brakes and hit the rear part of his car."

Plaintiff was hospitalized for a period of some seventeen days following the accident. The amount of her hospital care totaled $1,798.68. Her injuries were diagnosed as acute cervical flexion extension injury known as "whip-lash". After leaving the hospital she continued with physical therapy and traction at home and had to wear a cervical collar for a period of time. Plaintiff had worked as an IBM punch press operator as well as a waitress and had held several jobs for a period prior to the accident. She had been employed part of the time since the accident as a waitress. She is the mother of 4 children.

Trial was held almost two years later at which time the plaintiff testified that she had:

"[L]ost the strength in my right hand, and my last two fingers on my right hand go numb. They fall asleep. Or I get a pain in them. And my elbow. * * * I still get—have a stiff neck that just stays stiff. My shoulder hurts, and I still get the headaches that I have always had. * * * [If] I turn real quick, I can't see real clear when I come back. Just my vision blurs, and sometimes I see double, and I stuttered for a long time."

Dr. Willard S. Hunter, M.D., an orthopedic surgeon, called to testify for and on behalf of the plaintiff, stated under cross-examination:

"Q Okay. Would the normal motor functions—Would the hypesthesia, the mild hypesthesia which Dr. Colton describes, and which obviously you found, be disabling to Mrs. Kernan?

"A Oh, I don't think so. Maybe annoying.

"Q But she would suffer no disability in the use of her hand, is that correct?

"A I don't think so."

The report of Max T. Taylor, M.D., admitted in evidence without objection at the pre-trial conference, stated:

"At this time I cannot adequately evaluate her hand and see no reason why her difficulty should not completely clear. If you would like to have her re-evaluated by a neurologist we have no objection to this although I think the help obtained would be minimal. We have advised Kathleen on numerous occasions over the past few weeks to return to work as we feel this would benefit her physical condition. She however, has not done this to this date, the reason for this is not completely (sic) known. I still feel however, that if she would return to work that her disability would markedly decrease."

The report of W. A. Colton, Jr., M.D., made at the request of defendant's attorney, also admitted into evidence at the pre-trial conference, stated:

"Therefore, based on the above, it is my opinion that at the present time, Mrs. Kathleen Ann Kernan does demonstrate a mild disability consisting of a hypesthesia involving the right fifth and a portion of the right fourth finger as well

"...as a portion of the right forearm which may have resulted from the accident which occurred on January 29th, 1965."

The court instructed the jury that according to the Commissioner's 1941 Standard Ordinary Table of Mortality (18 A.R. S., p. 501) that plaintiff's life expectancy at the time of the accident was 42.12 years:

"This fact of which the court takes judicial notice, is now in evidence to be considered by you in arriving at the amount of damages, if you should find that the plaintiff Kathleen Ann Kernan is entitled to a verdict."

The court further instructed that:

" * * * and if you find from the evidence that plaintiff received injuries which are permanent or will be of long duration in nature, then you should compensate that plaintiff for such pain, suffering, inconvenience, annoyance and sickness, which you believe from the evidence, that the plaintiff will suffer in the future."

The record shows that counsel for defendant objected to these instructions.

In the opening argument to the jury counsel for plaintiff stated:

"If a person is going to live, let's say, 40 years from today, according to the mortality tables, and she's been under a doctor's care for approximately two and a half years, and here's medical, say— taking care of a woman, and the bills in the medical profession amount to— What do we come to here?

"Let's say $1,800 in two and a half years that has been incurred as a result of this injury.

\* . \* \* \* \* \*

"If it takes medical, say two and a half years, and it takes $1,800 worth of their services in two and a half years, this ought to give her $1,800 every two and a half years of her life, which is another 40 years, and two and a half years into 40 years goes approximately 18 times.

\* \* \* \* \* \*

"But if it's worth $1,800 worth of medical, it surely was $1,800 worth of pain, as far as I can see it.

"So give her that $1,800 worth of pain every two and a half years of her life. She might not sustain that same kind of pain, I understand, for the next 40 years. Not the same kind of pain. Might even be worse."

The jury returned a verdict in the amount of $25,500. The court entered judgment for plaintiff and denied defendant's motion for new trial and defendant appeals.

## INSTRUCTIONS TO THE JURY ON PERMANENT INJURIES AND LIFE EXPECTANCY AND COMMENT ON FUTURE MEDICAL EXPENSE.

Appellant contends that there was insufficient evidence, medical or otherwise, to support the plaintiff's claim to permanent injuries rising out of the accident on 29 January 1965 or for future medical expenses.

Appellant further contends that none of plaintiff's subjective complaints were supported by medical testimony save as to the numbness in the right hand mentioned in Dr. Colton's report, and that therefore nothing in the record will support an inference that the above subjective complaints would continue the remainder of plaintiff's normal life span. The only basis upon which the court would be warranted in instructing the jury on permanent injury and life expectancy is the evidence of the plaintiff herself as to her own subjective feelings and complaints which are not supported but on the contrary are contradicted by the testimony of the three medical doctors.

Our Supreme Court has stated that a jury is not bound my medical testimony as to lack of permanency of such injuries if there is controverting evidence to the contrary:

" * * * Nor is the jury bound by the testimony of a medical expert who testi-

fies as to lack of permanency of the injury, if there is controverting evidence or testimony from which it may be inferred that the injury is in fact permanent." City of Phenix v. Mullen, 65 Ariz. 83, 89, 174 P.2d 422, 425 (1946).

In certain situations the nature of the injury may warrant an instruction as to permanency of injuries based on the subjective testimony of the plaintiff alone. Hirsh v. Manley, 81 Ariz. 94, 300 P.2d 588 (1956).

■ Although the instruction standing alone might be acceptable under the facts in this case, we feel that the instruction together with counsel's comments as to future medical expense constitutes reversible error. The transcript does not reveal testimony regarding the need for future medical expense. Our Supreme Court stated in Henderson v. Breesman, 77 Ariz. 256, 269 P.2d 1059 (1954):

"* * * We are unable, however, to find any evidence that would authorize the jury to consider future medical expenses or permanent impairment of earning capacity. The mere fact alone that there may be some permanency to the injury is not enough. This court is committed to the proposition that the jury cannot be allowed to speculate or guess in making allowance for future medical expenses; there must be some data furnished the jury upon which it might reasonably estimate the amount to be allowed for this item." 77 Ariz. 256, 259, 269 P.2d 1059, 1061.

Counsel's comments taken together with the instructions allowed the jury to speculate upon matters not supported by the evidence and constituted reversible error.

## FUNDAMENTAL ERROR IN FAILING TO GIVE INSTRUCTION ON PROXIMATE CAUSE

■ Appellant claims that the court committed prejudicial error in failing to instruct on the issue of proximate cause. The transcript of record indicates that in settling the instructions the following took place:

(In Chambers)

"THE COURT: Let the record show the following instructions will be given in the form indicated:

Plaintiff's 1, Plaintiff's 2 as modified, Defendant's 4 as modified, Defendants' 5 as modified, Plaintiff's 4, 7, 8, 9 and 12, Defendants' 1 as modified, Defendants' 6 as modified, Defendants' 7, 8, and 9.

Add that as to all of the instructions requested by either party, they were either refused or withdrawn as indicated thereon. (End of discussion in chambers.)"

In addition to these instructions the court announced that it would give "stock" instructions as the defendant's counsel had anticipated the court would do. These were not specified by the court. We are aware of the practice of many courts and attorneys to agree to giving stock instructions and of the further practice of making a record of objections to instructions while the jury is in deliberation. However time saving this might be, we do not believe it the best practice. We feel that counsel should know what instructions are to be given and the court should be apprised by record made of any objection to instructions prior to the time the case is submitted to the jury.

In the instant case, counsel for the appellant at oral argument before this Court stated that he relied upon the trial court's statement that in addition to the instructions approved as modified, the court would give its own stock instructions. The record does not reflect that counsel asked what these instructions would be and counsel admits that this was not done. It would appear therefore that counsel was not aware of what "stock" instructions would be given by the court until after they were given and counsel for appellant admits that he did not catch this omission as to proximate cause until after he read the transcript in preparing for appeal.

Jurors may not always know the legal significance of the words "proximate cause", Fair v. Floyd, 3 Cir., 75 F.2d 920 (1935), and in this case under the circumstances the jury may well have been misled by the absence of an instruction on proximate cause both as it applied to the negligence of the defendant and to the plaintiff under the contributory negligence instruction given by the court. It is clear the instruction should have been given. Whether it was fundamental or reversible error we need not say in this case. Rule 51(a), Rules of Civil Procedure, 16 A.R.S., Sarwark Motor Sales, Inc. v. Woolridge, 88 Ariz. 173, 354 P.2d 34 (1960), Tipton v. Burson, 73 Ariz. 144, 238 P.2d 1098 (1951). Since the matter will have to be retried, the instruction can be requested at that time.

Reversed and remanded for new trial.

DONOFRIO and STEVENS, JJ., concur.