485 P.2d 574

The CITY OF KINGMAN, a municipal corporation, Appellant,

v.

Carter HAVATONE and Laura Havatone, his wife, Appellees.

No. 1 CA–CIV 1426.

Court of Appeals of Arizona, Division 1, Department A.

June 2, 1971.

As Corrected on Denial of Rehearing July 6, 1971.

Review Denied Sept. 21, 1971.

Snell & Wilmer by Arthur P. Greenfield and Michael L. Gallagher, Phoenix, for appellant.

Favour & Quail by John B. Schuyler, Jr., Prescott, for appellees.

STEVENS, Presiding Judge.

Carter Havatone was injured, arrested and incarcerated by a police officer of the City of Kingman. He filed an action seeking recovery in damages. Four claims for relief were stated. At the time of the trial a directed verdict was granted in favor of Kingman in relation to two of the claims. The case was submitted to the jury on the remaining two claims, namely, assault and battery, and false arrest. The jury resolved the false arrest issue in favor of Kingman and the assault and battery issue in favor of Havatone, assessing his damages in the sum of $500.

Havatone filed a comprehensive motion for new trial which raised all of the matters which are the subject of this opinion, including the question of the inadequacy of the damages. There was a comprehensive response to the motion. The trial court entered its order granting the motion "on the ground that the damages awarded by the jury to the plaintiff are insufficient." The order was conditioned that in the event Kingman filed a written consent to increase the verdict by a specified sum the motion for new trial would be denied. Kingman declined to do so and the order of the trial court granting a new trial on the issue of damages alone became effec-

tive. Kingman perfected a timely appeal from the order. There was no cross-appeal. On the appeal, Havatone presented cross-questions in his brief, all of the cross-questions being within the grounds urged by him in his motion for new trial.

The trial was held in the fall of 1969 and the various Rules of Civil Procedure, 16 A.R.S., cited in this opinion will be in their form as those rules existed in 1969. Some of the rules were amended in 1970.

A brief statement of the factual background, recited in the light favorable to the judgment in favor of the plaintiff, will suffice for the purposes of this opinion.

Mr. and Mrs. Havatone had lived in the Kingman area since 1942 and had raised a family of five sons. Havatone was a carpenter by trade and his work carried him to various locations outside of Kingman. He was working in California when he sustained an industrial accident on 24 August 1966. He was then 49 years of age. As an outgrowth of that accident, his left foot was amputated, the point of the amputation being approximately six inches above the ankle. He returned to his home in Kingman in March 1967 fitted with an artificial limb. This impaired his mobility.

He was still receiving industrial compensation when the incident in question occurred on 12 May 1967.

On that date Mr. and Mrs. Havatone left their home in their automobile for the purpose of dining in Kingman. Havatone drove the car. Mrs. Havatone does not drive motor vehicles. A family argument ensued. They stopped at a service station and Mrs. Havatone obtained the keys to the car and procured the moving of the car to a point behind the service station for the reason that she did not want her husband to drive any more that evening. When the argument became heated, the police were called. Havatone had knowledge of that fact and advised those present that he would be at a tavern across the alley and a short distance from the service station. Shortly thereafter Officer Peterson of the Police Department of the City of

Kingman arrived in a patrol car. Officer Peterson then drove into the alley. Havatone had not reached the tavern when Officer Peterson saw him and called to him. Shortly thereafter Officer Peterson hit Havatone on the head with his nightstick under circumstances in relation to which there was a conflict of testimony, a conflict resolved in favor of Havatone by the jury's verdict.

Havatone began to experience double vision when he looked to the left. This was still present at the time of the trial. Doctor James Chapman Wootten, who had been Board certified "as an opthalmologist in opthalmology," examined Havatone on 8 September 1967 and again on 19 January 1968. In his testimony he affirmed permanent damage and testified that he recommended surgery, a type of surgical procedure which he had performed. He testified:

"My anticipation would be that the surgery would improve the situation. It might increase the area where he sees singly. Maybe a 90% chance of increasing the area of single vision. In other words, putting it around the other way, decreasing the index in the order of 10%."

Dr. Wootten further testified as to the limitations and the dangers which Havatone would experience in industrial employment directly related to the eye condition. Without objection the doctor testified that the estimated overall cost of the surgery, hospitalization and other incidents thereto would be $800. Thereafter Havatone was on the witness stand. He was not asked whether he would submit to the recommended surgery and so the record is silent in that respect. After the close of all of the evidence, the defense moved to strike that portion of the doctor's testimony in relation to the cost of post-trial surgery. The motion was granted and the trial court instructed the jury to disregard that portion of the doctor's testimony. The Havatone medical expenses to the day of the trial were established to be in the

sum of $120. Over strenuous objection the deposition of Officer Peterson was presented to the jury by the defense. This matter will be discussed later in this opinion.

## THE USE OF CROSS-QUESTIONS

■ Havatone urged cross-questions in his brief on appeal. The propriety of this procedure is questioned by Kingman. The issues covered by the cross-questions on appeal were presented to the trial court in the Havatone motion for new trial along with the question relative to the adequacy of the verdict. The trial court limited its stated reasons for the granting of the new trial to the inadequacy of the verdict. The propriety of the presentation of cross-questions was sustained by our Supreme Court in Santanello v. Cooper, 106 Ariz. 262, 475 P.2d 246 (1970).

In our opinion not only are cross-questions proper to provide additional support for the trial court's action in granting a new trial, they are also proper in those instances where it is appropriate for the appellate court to give guidance to the trial court in conducting the new trial which has been granted. The main issues that are urged by the cross-questions which may affect the conduct of a new trial are the striking of that portion of the doctor's testimony relating to the expenses of the future surgery and the use of Officer Peterson's deposition.

■ Before we consider these matters, we express the view that we find no abuse of the trial court's discretion in awarding a new trial on the issue of damages. We express no opinion as to the sum which would be adequate. We find the authority for the trial court's order in Rule 59(i) (1) which we set forth in the footnote.*

■ Doctor Wootten was called out of order early in the case as a professional accommodation, a practice we have frequently observed and approve. His testimony as to future medical expenses had the requisite foundation of an affirmative medical opinion and recommendation that the surgery be performed. The doctor's estimate as to the expense of future surgery was received without objection. This would normally be a waiver of the right to thereafter strike the testimony. Under the circumstances of the trial where Havatone had not completed his testimony, we hold that there was no waiver.

■ The question arises as to whether the absence of testimony by Havatone that he would submit to the surgery rendered the doctor's estimate as to the expense thereof subject to a motion to strike. In our opinion it did.

The appellee has cited several Arizona cases which were reviewed by this Court prior to this Court's declaration in Griffen v. Stevenson, 1 Ariz.App. 311, 402 P.2d 432 (1965) [review denied] that:

"Damages for future medical expenses and future loss of earnings in connection with a specific surgical procedure may be recovered where the evidence supports a finding that it is reasonably probable or certain that such surgery will be performed in the future, and where the amount of such future damages has been established with reasonable certainty." 1 Ariz.App. at 312, 402 P.2d at 433.

---

* "When a motion for new trial is made upon the ground that the damages awarded are either excessive or insufficient, the court may grant the new trial conditionally upon the filing within a fixed period of time of a statement by the party adversely affected by reduction or increase of damages accepting that amount of damages which the court shall designate. If such a statement is filed within the prescribed time, the motion for new trial shall be regarded as denied as of the date of such filing. If no statement is filed, the motion for new trial shall be regarded as granted as of the date of the expiration of the time period within which a statement could have been filed. No further written order shall be required to make an order granting or denying the new trial final. If the conditional order of the court requires a reduction of or increase in damages, then the new trial will be granted in respect of the damages only and the verdict shall stand in all other respects."

This Court stated the question which it there considered as follows:

"The question now is whether under this evidence it is reasonably probable that such surgery will be performed in the future." 1 Ariz.App. at 313, 402 P.2d at 434.

In Griffen this Court analyzed the record and concluded there were too many conditional and speculative hurdles to pass before the medical decision for surgery could be reached. This situation is not present in Doctor Wootten's testimony.

█ It matters not how affirmative a doctor's testimony may be as to the need and recommendation for future surgery, unless the patient evidences at least a reasonable willingness to submit to surgery and the evidence discloses that there is a reasonable probability that the surgery will be performed, the estimated cost thereof is not a proper element of damages to be considered by the jury. We are not faced with the estimated cost of future nonsurgical care and we limit our opinion to the facts before us.

## THE DEPOSITION

It is important that we review a portion of the chronology of this case. The event occurred on 12 May 1967. The complaint was filed in Yavapai County on 27 March 1968 and was transferred to Mohave County by a court order entered on 22 April 1968. Both parties engaged in discovery by written interrogatories. Kingman filed its answers to the Havatone interrogatories on 12 March 1969 wherein it was disclosed, in substance, that Kingman was then not aware of Officer Peterson's location, he having left the Kingman Police Department and reentered the military service.

A pretrial conference was held on 6 May 1969 and the case was set for trial for Wednesday, 24 September 1969. The pretrial order is silent as to the witnesses to be called. Each party filed a pretrial memorandum and each of these was silent as to the witnesses to be called.

The defendant took the deposition of Officer Peterson in Colorado Springs, Colorado on Friday, 19 September 1969, at 2:35 P.M. No one appeared at the deposition on behalf of the Havatones. Prior to the presentation of any evidence to the jury and on the first day of trial, 24 September, Havatone moved the court for an order suppressing the Peterson deposition. At first the trial court granted the motion and then the trial court reversed itself, denying the motion. The deposition was used at the trial and the matter was raised in the motion for new trial as well as by the cross-questions on appeal.

The background for the taking of the deposition is not supported by documents. We must refer to the reporter's transcript of the motion to suppress and the arguments presented to the trial court. Mr. Perry of the firm of Snell & Wilmer appears to have had the basic responsibility for the defense until shortly before the trial when Mr. Greenfield was assigned this responsibility. Mr. Counce also assisted in some of the preliminary matters. The office of Snell & Wilmer is in Phoenix. Mr. Favour of Favour & Quail and Mr. Schuyler were the attorneys for Havatone. Mr. Favour's office is in Prescott and Mr. Schuyler is in a branch office in Sedona. The table of distances set forth in the 1969 map published by the Arizona Highway Department discloses the following distances:

| | |
|---|---|
| Phoenix to Prescott | 97 miles |
| Phoenix to Kingman | 185 miles |
| Prescott to Kingman | 163 miles |
| Phoenix to Sedona | 114 miles |
| Prescott to Sedona | 61 miles |
| Kingman to Sedona | 190 miles |

By letters dated 7 May 1969 the attorneys for Kingman attempted without success to locate Officer Peterson. Sometime prior to the 17th day of September 1969, the exact dates are not clear in the record, the attorneys for Kingman attempted to locate Officer Peterson through at least two locater services. On or about the morning of 18 September, they were informed that Officer Peterson was in Colorado Springs,

Colorado, on emergency leave from a duty assignment in Viet Nam. They contacted him and were informed that he would submit to a deposition in Colorado Springs on the 19th, that he could not come to Kingman for the trial and that he must promptly report to a California station to await airspace for his return flight to Viet Nam.

There was some preliminary discussion as to the possibility of a settlement after Mr. Greenfield received the file, this being on the 17th. On either the 17th or the 18th it was suggested that Mr. Favour go to Colorado Springs for the purpose of taking Officer Peterson's deposition and he declined to do so. Sometime on the 18th, while Mr. Favour was not in his office, a message was telephoned to his office stating that tickets would be available for Mr. Favour in the Phoenix office of Kingman's attorneys and that a reservation had been made for Mr. Favour's flight to Colorado Springs. Mr. Schuyler was not available. Mr. Favour had other commitments for Friday the 19th.

On the 18th Mr. Perry phoned the trial judge in Kingman and the following *ex parte* order was entered:

"Mr. Roger Perry, counsel for defendant, advised the Court by telephone today that it is necessary to depose Wilmer. Peterson, a serviceman stationed in Vietnam (sic), but in Colorado Springs, Colorado, on temporary leave at this time.

And it appearing to the Court that his testimony would be material,

IT IS ORDERED authorizing counsel for defendant to take the deposition of Wilmer Peterson on September 19, 1969, at 2:30 p. m. at 423 Glen View Court, Colorado Springs, Colorado, before Kenneth Kirkpatrick, a Court Reporter, on the condition that the defendant pay all costs and expenses of plaintiff's counsel if he should choose to attend the deposition and examine the witness."

At the time of the hearing on the motion to suppress, the trial judge stated that he had assumed that Mr. Favour did not wish to go to Colorado Springs unless his expenses were paid but all other arrangements were agreeable. The trial judge and counsel were all frank in their statements of the problem. The trial judge concluded with the following statement and order:

"I am going to change my position. I would rather do that, in that it was my fault for allowing this order to issue. I have rather a painful experience in mind, and I would rather allow it. So I will reverse my position on that."

This Court recognizes that very often depositions on oral interrogatories are taken on oral stipulations and that these depositions are used in trials without question. Where a question arises, the Rules of Civil Procedure are specific.

Rule 26(a) recites in part:

" * * * Depositions shall be taken only in accordance with these Rules. * * *."

Rule 30(a) specifies:

"A party desiring to take the deposition of any person upon oral examination shall give reasonable notice in writing to every other party to the action. * * * On motion of any party upon whom the notice is served, the court may for cause shown enlarge or shorten the time."

■ Rule 30(c) relates to protective orders and provides in part:

"After notice is served for taking a deposition by oral examination, upon motion seasonably made by any party * * * and upon notice and for good cause shown, the court in which the action is pending * * *.

* * * * * *

may make any other order which justice requires to protect the party or witness from annoyance, embarrassment or oppression."

The last sentence of the above-quoted Rule would permit the trial court to direct the payment of the expenses of opposing counsel under appropriate circumstances.

Rule 32(a) provides:

"All errors and irregularities in the notice for taking a deposition are waived unless written objection is promptly served upon the party giving the notice."

From the foregoing it can be seen that a party has the right to insist on written notice and there is no requirement for the filing of a motion for a protective order in the absence of a written notice for the taking of the deposition.

There are additional rules of interest in relation to the computation of time. Rule 6(a) provides in part:

"* * * When the period of time prescribed or allowed is less than 7 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation."

Rule 6(e) is as follows:

"Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon him and the notice or paper is served upon him by mail, three days shall be added to the prescribed period."

And Rule 5(c) authorizes service by mail.

It is interesting to speculate that had Kingman's attorneys sent someone, be that person a member of their legal staff or a process server, to Prescott to serve the notice of the taking of the deposition, than to enable Havatone to secure a protective order it would have been necessary to travel to Phoenix to serve the motion and to travel to Kingman to file the motion. Our situation here is far different from the situation facing the Court in State v. Superior Court, 3 Ariz.App. 541, 416 P.2d 435 (1966), wherein it was held that a 24-hour-written notice which permitted a motion for a protective order was reasonable, all of these matters having occurred in the City of Tucson.

We have great sympathy for the problems facing Kingman's attorneys. Their problems cannot be answered under our Rules of Civil Procedure by an oral notice of the taking of the deposition. Havatone's attorney not having received a written notice was under no obligation to move for a protective order and his motion to suppress was timely. It was error to fail to grant the motion to suppress.

The order granting the motion for new trial on the issue of damages alone is affirmed.

CASE and DONOFRIO, JJ., concur.