532 P.2d 876

**David Charles BESCH, Bob Fulton, Fred Fulton, and Fulton Trucking, Appellants,**

v.

**Ricky TRIPLETT, by and through his guardian ad litem, Luther Triplett, Appellee.**

**No. I CA–CIV 2389.**

Court of Appeals of Arizona, Division 1, Department A.

March 11, 1975.

Rehearing Denied March 26, 1975.
Review Denied April 22, 1975.

---

Gust, Rosenfeld, Divelbess & Henderson by Harold H. Swenson, James F. Henderson, Phoenix, for appellants.

Smith, Riggs, Buckley, Riggs & Fuller by Guy Buckley, Mesa, and Gibson, Gibson & Schoepf by Franklin K. Gibson, Phoenix, for appellee.

## OPINION

OGG, Presiding Judge.

Appellants David C. Besch and Fulton Trucking seek relief from a $30,000 jury verdict and judgment in favor of plaintiff-appellee Ricky Triplett. Appellants contend that the instructions, which allowed the jury to consider future medical expenses and mortality tables in arriving at an award, were improperly given. After a review of the applicable law, we affirm the judgment.

The facts are undisputed. Ricky Triplett was injured when a truck driven by David C. Besch, an employee of Fulton Trucking, collided with Ricky while he was crossing the street in a marked crosswalk. Ricky sustained injuries to his right knee; those injuries are the basis of the award in this case.

Appellants state that before an instruction on future medical expenses is justified there must be evidence which indicates a willingness on the part of the injured party to submit to that future medical care and a showing of permanency of the injury. City of Kingman v. Havatone, 14 Ariz. App. 585, 485 P.2d 574 (1971). Appellants conclude that since neither of these elements were adequately proved at trial the instructions were erroneously given and a reversal should follow.

The general rule outlining the necessary showing to recover damages for future medical care is stated in Griffen v. Stevenson, 1 Ariz.App. 311, 402 P.2d 432 (1965). The governing principle is stated in these terms:

" . . . Damages for future medical expenses and future loss of earnings in connection with a specific surgical pro-

cedure may be recovered where the evidence supports a finding that it is reasonably probable or certain that such surgery will be performed in the future, and where the amount of such future damages has been established with reasonable certainty." 1 Ariz.App. at 312, 402 P.2d at 433.

The heart of the quoted passage is that it is "reasonably probable or certain that such surgery will be performed in the future." This can only be determined from all the relevant circumstances which are before the court. The court in Griffen analyzed all the evidence and concluded that an instruction on future medical expenses would have been inappropriate. Griffen's doctor, on direct examination, testified that:

" . . . taking this particular case in evidence, *if* the patient's arm still remains in a discomforting and a disabling condition, then I would consent to *consider* him for a surgical procedure to attempt to correct the discomfort which he is having. He would have to be fully cognizant of the . . . surgical procedure. [Emphasis added]" 1 Ariz. App. at 313, 402 P.2d at 434.

In conjunction with the determination that the surgery itself was speculative, the court also observed that there was no "evidence that the plaintiff contemplated having the surgery." After considering all the evidence the court concluded "that there is not legally sufficient evidence to permit the jury to be instructed as to future medical expenses . . . for the reason it is highly speculative and conjectural."

The court in Havatone, supra, evidently concurred in this court's interpretation of Griffen, for they stated that:

"[i]n Griffen this Court analyzed the record and concluded there were *too* many conditional and speculative hurdles to pass before the medical decision for surgery could be reached." 14 Ariz.App. at 589, 485 P.2d at 578.

However, the Havatone court apparently extended Griffen by requiring an explicit representation reflecting a willingness to submit to future surgery. That court further acknowledged that there was no question about the need for surgery but was not satisfied that the plaintiff expressed a willingness to submit to the operation.

"The question arises as to whether the absence of testimony by Havatone that he would submit to the surgery rendered the doctor's estimate as to the expense thereof subject to a motion to strike. In our opinion it did. . . .

It matters not how affirmative a doctor's testimony may be as to the need and recommendation for future surgery, unless the patient evidences at least a reasonable willingness to submit to surgery and the evidence discloses that there is a reasonable probability that the surgery will be performed, the estimated costs thereof is not a proper element of damages to be considered by the jury." 14 Ariz.App. at 588–89, 485 P.2d at 577–78.

To the extent that Havatone requires, in every case, an explicit representation by the injured party that he is willing to undergo future medical treatment, we cannot agree. We do, however, adhere to the Griffen "totality" approach.

The facts of this case, in our opinion, demonstrate the untenability of an encyclopedic rule which would require a specific question to be asked as a prerequisite to an instruction on future medical expenses.

Ricky Triplett was twelve years old when this accident occurred. Prior to this time he was an active boy, participating in baseball, football and other normal activities which draw upon physical qualities. After the accident Ricky was referred to Dr. Sidney L. Stovall, an orthopedic surgeon, for treatment of his knee. Dr. Stovall testified that his examination of Ricky led to the recommendation that the youth refrain from "doing anything of a stren-

uous nature that would precipitate or bring on these episodes of the knee giving out." Activities of this nature including going up and down stairs, running, making fast turns, or cutting, such as in football. Ricky was placed on an exercise program with the hope that the quadracept muscle would rebuild or develop and inhibit recurrence of the knee problems. At the time of trial, however, the treatment was not successful. When questioned about the need for future surgery on the knee, the following dialogue transpired:

"Q. Do you have an opinion, based upon reasonable medical probability, as to whether Ricky will require surgery intervention in the future as a result of these injuries?

A. The chances are better than fifty per cent that he will.

Q. Is there a greater likelihood, in your medical opinion, that he will have to have surgery?

A. Yes."

The need for future surgical intervention was also confirmed on cross-examination.

"Q. . . . you cannot say 100% that he will absolutely have to have this surgery?

A. I don't think anybody can say 100%, but if he keeps on like he is doing, I am pretty sure he is going to need it."

Dr. Stovall was then asked when the surgery would be performed.

"Q. What age would you estimate that Ricky would have to have this surgery?

A. Depends upon when he completes his full growth. We usually like to wait—as a rule we like to wait on these until their growth is completed, because to do this operation you have to do it through the growth line of the end of the bone just below the knee, and sometimes during the operation if you disturb that growth line that particular bone will not grow as fast as the other small bones in both of the legs will grow."

\* \* \* \* \* \*

"Q. Is that usually then about nineteen, twenty or twenty-one, In that area?

A. It comes on—if we disturb the growth in the center now, it starts immediately and progresses up until he is through growing—it varies with individuals."

At the time of trial, Ricky was fourteen years old. It is clear that the surgery to be performed is not imminent, not because of Ricky's failure to consent to the operation, but because the boy's growth must be complete before the operation can be performed. The testimony indicated that Ricky had complied with the rehabilitative programs recommended by Dr. Stovall. Furthermore, when asked what Ricky's future would be if the operation was not performed, Dr. Stovall testified:

"I really don't know. If this keeps on developing like this and he chooses not to have anything done about it, why, the chances are that eventually he may develop damage, or we have a name for it —develop damage to the articular cartilage of either the kneecap or the bones that make up the joint, and I have seen this occur, and when it happens we usually end up by taking the kneecap out."

At best, Ricky could have been asked if he had a present intention to submit to an operation to be performed perhaps seven or eight years in the future. We cannot agree with appellants that the failure to ask a question of this nature prevents the submission of the issue of future medical expenses to the jury. Moreover, the totality of circumstances indicates that the instruction was properly given.

Appellants objected to the instruction on damages based on future medical expenses.

They also objected "to the giving of the instruction on the plaintiff's life expectancy as reflected by the . . . Standard Table on Mortality;" the basis for each objection was the same—appellee's alleged failure to demonstrate that the injuries were permanent. Consequently, resolution of the permanency issue will dispose of both remaining questions on appeal.

 When there is no issue or evidence of permanent injury the matter cannot be submitted to the jury. Henderson v. Breesman, 77 Ariz. 256, 269 P.2d 1059 (1954); Charron v. Kernan, 8 Ariz.App. 488, 447 P.2d 580 (1968). However, we believe that there was sufficient evidence of permanency in this case.

"Q. Now, Dr. Stovall, do you have an opinion, based upon reasonable medical probability, as to whether Ricky has permanent disability?

A. Yes.

Q. Would you state that opinion.

A. In my opinion this—this term possibility, I am not sure what you mean, but if you mean is he going to have something further done in years to come, the possibility is that he will.

Q. Greater likelihood that it will have to be done than not?

A. Yes, I would think so.

Q. And you have an opinion, based upon reasonable medical probability, as to whether Ricky will continue to suffer pain as a result of his injury?

A. He will continue having these episodes of the knee giving out on him."

We conclude, therefore, that both instructions given by the trial court and objected to by appellants were proper. Accordingly, the judgment in favor of Ricky Triplett is affirmed.

FROEB and HAIRE, JJ., concur.