659 P.2d 35

**Louis Robert SAIDE and General Electric Company, a New York corporation, Plaintiffs-Counterdefendants-Appellees,**

v.

**Debra Lynn STANTON, Defendant-Counterclaimant-Appellant.**

No. 15848.

Supreme Court of Arizona, In Division.

Jan. 24, 1983.

Rehearing Denied March 1, 1983.

Lewis & Roca by D.W. Grainger, Paul G. Ulrich, Beth J. Schermer, Phoenix, for plaintiffs-counterdefendants-appellees.

Leonard, Clancy & O'Melia by Kenneth P. Clancy, Phoenix, for defendant-counter-claimant-appellant.

FELDMAN, Justice.

Debra Stanton appeals from a judgment in her favor on her counterclaim and from the trial court's denial of her motion for a new trial. This court has jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and Ariz.R.Civ.App.P. 19(e).

Stanton was injured in an accident involving three vehicles which occurred on November 28, 1977. One of the vehicles involved in the collision was driven by Robert Saide and was owned by his employer, General Electric Company (appellees). Saide filed an action against Stanton and the others involved in the accident. Stanton counterclaimed against Saide and General Electric, seeking a recovery of damages for the personal injuries she sustained in the accident. She also filed a cross-claim against the other defendants named in appellees' complaint.

The case was tried to a jury, which returned a verdict in favor of Stanton on her counterclaim against appellees. The others involved in the accident were found not responsible. Judgment was entered on the counterclaim in favor of Stanton and against appellees. Pursuant to Ariz.R. Civ.P. 59(i), Stanton filed an alternative motion for an additur or a new trial, claiming that the trial court erred in instructing the jury that it could not consider Stanton's future medical expenses in assessing damages. This motion was denied. Stanton appeals from the judgment and the denial of the motion.

The issue before this court is whether the trial court erred in refusing to submit the issue of Stanton's future medical expenses to the jury.

Arizona courts have consistently followed the rule that in order for a trial court to properly submit the question of future medical expenses to the jury, the need for future care must be reasonably probable and there must be some evidence of the probable nature and cost of the future treatment. *Hirsh v. Manley,* 81 Ariz. 94, 101–03, 300 P.2d 588, 594 (1956); *Henderson v. Breesman,* 77 Ariz. 256, 259, 269 P.2d 1059, 1061–62 (1954); *Consolidated Arizona Smelting Co. v. Egich,* 22 Ariz. 543, 556–59, 199 P. 132, 136–37 (1920); *Valley National Bank v. Haney,* 27 Ariz.App. 692, 694, 558 P.2d 720, 722 (1976); *Besch v. Triplett,* 23 Ariz.App. 301, 302–03, 532 P.2d 876, 877–78 (1975). The reason for this rule was stated in *Henderson v. Breesman, supra:*

> This court is committed to the proposition that the jury cannot be allowed to speculate or guess in making allowance for future medical expenses; there must be some data furnished the jury upon which it might reasonably estimate the amount to be allowed for this item. Of course, at best it is a mere estimate and cannot be determined with accuracy, but there must be some evidence to authorize the estimate. The jury cannot be left to guess the probable nature of future treatment or the probable expense thereof.

*Id.* 77 Ariz. at 259, 269 P.2d at 1061–62 (citations omitted).

The evidence presented at trial regarding Stanton's injuries and the probability of future treatment was the following. As a result of the collision, Stanton's chin struck the steering wheel of her car. This impact pushed her lower teeth backward into her mouth. These teeth were immediately wired together until she could be examined by her dentist, Dr. Pawlowski. Upon examining Stanton's mouth, Dr. Pawlowski determined that her four lower front teeth were "non-vital"; the nerves were dead. The cuspids on each side of the four lower teeth sustained no injury.

Over the next few months, the dentist performed root canal work on the four teeth, put crowns on them and inserted a gold post into the roots for stability. The crowns were then "splinted" or welded together for strength so that the four teeth would thereafter function as a solid unit.

A good result was obtained and at the time of trial everything appeared to be healing properly.

Dr. Pawlowski testified that the four teeth injured in this case are the weakest in the human mouth. These teeth have the smallest roots and thinnest bone in the underlying gum. Even in a natural state, the dentist stated, these teeth are the most susceptible to infection and are particularly susceptible to infection or reinjury after the type of traumatic damage Stanton sustained. In addition, teeth are generally more brittle after a root canal is performed.

Based upon a survey conducted by the American Dental Association, Dr. Pawlowski also testified that the crown work in question has an average life of ten years. While it is not entirely clear from his testimony, this ten-year statistic apparently takes into account the variables of wear, infection, fracture and breakage that may occur, and, thus, takes into consideration Stanton's increased susceptibility to reinjury. The dentist also described the nature of the future treatment Stanton would need once the crowns wear out or if infection or fracturing should occur.

If one of Stanton's outside teeth becomes infected or if a problem develops with the crown, it might be possible to sever only that one tooth from the group of four, replace it with a false tooth and join the false tooth to a neighboring natural tooth. If a problem develops with an inside tooth, however, any repair work will destroy the existing root canals. As a result, all four teeth would need to be removed and replaced with a bridge. Similar to the crowns, the dentist testified that the life of such a bridge is ten years.

Throughout this testimony, Dr. Pawlowski admitted that without "a crystal ball" there was no way of being certain exactly whether, when and under what circumstances Stanton would require these future procedures. He thus could not say that the need for the described procedures was "probable." The dentist did *not* say, however, that the averages were inapplicable to Stanton, nor did he indicate that the lack of

trouble up to the time of trial meant that Stanton would not have future problems. In fact, just the opposite is true; according to the dentist, "no pain and perfect healing do not necessarily say that she will not have a problem in the future." He added, "I can't fight the odds that much."

The dentist went on to state that proper preventative care would be necessary because of the extent of the injury and repair work. He suggested that Stanton visit a dentist every six months for proper cleaning and examination rather than on a nine-month or one-year basis which would have been sufficient absent the injury.

Finally, in describing the cost of these future procedures, the dentist stated that a regular six-month checkup with an X-ray cost $16.00, a crown with a gold post cost $190.00 at the time of the procedure and cost $250.00 at the time of trial, and the cost per tooth in a bridge was $230.00.

█ It is undisputed that Stanton's dental injury is a permanent condition. The nerves in the four lower teeth are dead and can never be revived. The mere fact that a condition is permanent, however, does not alone constitute a sufficient basis for the award of future medical expenses. *Henderson v. Breesman, supra; Valley National Bank v. Haney, supra.* As stated earlier, there must be some evidence of the probable need for and nature of the future treatment, plus evidence of the cost of that treatment.

█ Whether future medical expenses are reasonably probable or certain is determined "from all the relevant circumstances which are before the court." *Besch v. Triplett,* 23 Ariz.App. at 303, 532 P.2d at 878. The use or refusal of an expert to use a "magic word" or phrase such as "probability" is not determinative. The trier of fact is allowed to determine probability or lack thereof if the evidence, taken as a whole, is sufficient to warrant such a conclusion. *Id.* After reviewing the record and the testimony of Dr. Pawlowski, we find that there was sufficient evidence to support an instruction on future medical expenses. The

factors which persuade us are the following: First, Stanton was twenty-one years of age at the time of the accident. Evidence was admitted at trial which indicated that she had a life expectancy of approximately fifty-five years. Second, the dentist emphasized that the injured teeth are the weakest and most susceptible to infection and even more susceptible after a traumatic injury. Third, Dr. Pawlowski then testified that the crowns he placed in Stanton's mouth and the future bridgework would last an average of ten years. Together, these facts clearly permit the jury to find that there was a reasonable probability that Stanton will need future dental treatment in the form of new crowns and will eventually require an entire bridge.[1] *Young v. Gateway Transportation Co.,* 26 Ill.App.3d 864, 870–71, 326 N.E.2d 222, 227–28 (1975) (issue of future medical expenses properly submitted to jury where plaintiff had life expectancy of thirty-three years and plaintiff's hip replacement prosthesis had expected life of ten to fifteen years); *Elba Wood Products, Inc. v. Brackin,* 356 So.2d 119, 126 (Ala.1978) (future medical expense issue properly submitted to jury where evidence showed plaintiff had been fitted with an artificial leg which was about to wear out after one and one-half years).

■ The testimony was clearly sufficient to enable the jury to find that even though Stanton had no problems at the time of trial, she would need additional dental examinations and would probably need the crown and bridgework described by Dr. Pawlowski, perhaps every ten years. The dentist did not apply the statistics directly to Stanton because he could not know whether she would be an "average" patient or an exception to the rule. The fact that the dentist refused to foretell the future and would not state positively· that Stanton would require these procedures goes to the weight of his testimony and does not deprive the jury of the right to consider it. *Blim v. Newbury Industries,* 443 F.2d 1126, 1129 (10th Cir.1971); *Pietrzak v. Eggen,* 295 N.W.2d 504, 507–08 (Minn.1980); *Dornberg v. St. Paul City Railway Co.,* 253 Minn. 52, 60, 91 N.W.2d 178, 185 (1958). Furthermore, it is well within the province of the jury to reach their own conclusion on the issue as long as the evidence as a whole will support a finding that the future treatments are reasonably probable. *Besch v. Triplett, supra.*

■ The estimated cost of these future procedures could adequately be determined by the jury based upon Stanton's past dental expenses and the dentist's testimony as to the cost of the future procedures. *Valley National Bank v. Haney, supra; Young v. Gateway Transportation Co.,* 26 Ill.App.3d at 871, 326 N.E.2d at 228; *Strong v. Williams,* 154 Mont. 65, 69, 460 P.2d 90, 92 (1969).

We find, therefore, that the trial court erred in refusing to instruct the jury on the issue of Stanton's future medical expenses.

■ Appellees argue that if a new trial is granted, the issues of liability and damages are so inseparable that both issues must be retried. This court has stated that where the issues of liability and damages are "so inextricably entwined that a fair trial could

---

1. Since there was sufficient evidence to permit the jury to find a probability of the need for future work on both crowns and bridges, we need not decide whether the jury may consider future expenses which are only possible. *See Southwestern Freight Lines, Ltd. v. Floyd,* 58 Ariz. 249, 119 P.2d 120 (1941), cited by both parties, which holds that the trial court properly admitted testimony of the possible consequences, including epilepsy, of a brain injury because the heightened susceptibility to the development of such a condition was of itself an injury which the jury could consider.

If the jury may consider evidence of possible future disability in awarding damages—and ap-

pellees here did not object to the instruction on damages for future pain and disability—then the same rationale logically could be applied to medical expenses which, although not probable, present a significant possibility. *See, e.g., Brown v. Johnson,* 24 Utah 2d 388, 472 P.2d 942 (1970), holding that it was not error to submit the issue of future surgical expenses to the jury on evidence that 15% of those with plaintiff's injury would eventually require surgery. The court reasoned that this evidence was not speculative and it was for the jury to determine what value to place upon the percentage. *Id.* at 392, 472 P.2d at 945.

not be given ... on the issue of damages alone then a new trial will be ordered on all issues." *Tovrea Equipment Co. v. Gobby,* 72 Ariz. 38, 42, 230 P.2d 512, 515 (1951).

The jury in this case considered the alleged liability of all three drivers involved in the accident and found that only Saide was legally liable. Although the liability issues may have been strongly contested, we do not believe that the issues pertaining to Stanton's damages are such that they affected the resolution of the liability issues. The verdict was not disproportionate to the proven damages,[2] and we cannot say that the verdict represented a compromise or was the result of passion and prejudice. *See Mayo v. Ephrom,* 84 Ariz. 169, 173–74, 325 P.2d 814, 817 (1958); *Tovrea Equipment Co. v. Gobby, supra.* Where the verdict does not indicate a contamination of the jury finding on liability issues, the damage issue will ordinarily be severable and the new trial may be confined to the question of damages. *See Tucson Rapid Transit Co. v. Tocci,* 3 Ariz.App. 330, 340, 414 P.2d 179, 189 (1966).

Since the only error in this case relates to the issue of damages, which is clearly separate from the issue of liability, we order a new trial on damages alone.[3] *Hirsh v. Manley,* 81 Ariz. at 104, 300 P.2d at 595; *Tucson Rapid Transit Co. v. Tocci, supra;* Ariz.R.Civ.P. 59(h).

Accordingly, we remand this cause to the trial court for a new trial limited to the question of damages.

GORDON, V.C.J., and MELVYN T. SHELLEY, Superior Court Judge, concur.

Note: The Honorable MELVYN T. SHELLEY, Presiding Judge of the Superior Court of Navajo County was assigned to assist this Court in the disposition of this matter.

---

**2.** The jury awarded Stanton $5,000 in damages to cover past medical expenses, pain and disability and future pain and disability.

**3.** We do not remand to the trial court for a determination under Ariz.R.Civ.P. 59(i) of whether to order an increase of damages with a new trial conditioned on appellees' acceptance of the increase. Under the facts of this case, this would be the best solution from a pragmatic standpoint. Stanton's motion, however, while filed under Rule 59(i), was not actually based upon the contention that the jury had awarded insufficient damages under the instructions of the court. It was, rather, based upon the contention that the court erred as a matter of law in taking the issue of future medical expenses from the jury. Thus, the jury was never given the right to consider future medical expenses. On remand, the jury may decide that future expenses are probable and make an award for them, or may conclude that they are too speculative and make no award. On this record, the question is for the finder of fact and cannot be decided as a matter of law. Therefore, an additur, which would necessarily allow some damages for future medical expenses, would be inappropriate.