744 P.2d 705

**Thomas P. DeSTORIES and Daria DeStories, husband and wife; John Fornara and Ruth Jean Fornara, husband and wife; Bryan Briceland and Michael John Viscardi, Sr.; Albert Ahrens and Bobbie B. Ahrens, husband and wife; Terry S. Trent, a single man, Plaintiffs–Appellants,**

**v.**

**CITY OF PHOENIX, a body politic, and Liberty Builders, an Arizona corporation, Defendants–Appellees.**

**No. 1 CA–CIV 8643.**

Court of Appeals of Arizona,
Division 1, Department A.

May 7, 1987.

Reconsideration Denied June 29, 1987.

Review Denied Oct. 14, 1987.

Friedman & Caldwell by Steven M. Friedman, Phoenix, for plaintiffs-appellants.

Beer & Toone, P.C. by Thomas L. Toone, Phoenix, for defendant-appellee City of Phoenix.

Weyl, Guyer, MacBan & Olson, P.A. by Thomas G. Bakker, Mark A. Williams, Phoenix, for defendant-appellee Liberty Builders.

## OPINION

BROOKS, Judge.

This is an appeal from a summary judgment in favor of defendants-appellees (defendants) in plaintiffs-appellants' (plaintiffs) action for damages arising from their exposure to asbestos dust during the interior remodeling of Terminal 2 at Phoenix Sky Harbor International Airport. The principal issue on appeal is whether exposure to and inhalation of airborne asbestos particles, which create an increased risk of asbestosis or lung cancer but no immediate physical deterioration, constitute a sufficient physical injury to support a claim for damages for emotional distress. We also consider whether an increased risk of contracting asbestosis or lung cancer constitutes a legally compensable injury in and of itself, and whether plaintiffs demonstrated the existence of a genuine issue of material fact connected with their claim for anticipated expenditures for increased medical surveillance to detect early signs of lung disease.

Viewed in the light most favorable to plaintiffs, *State ex rel. Corbin v. Sabel*, 138 Ariz. 253, 674 P.2d 316 (App.1983), the facts are as follows. Plaintiffs were employed in various capacities by subcontractors who contracted with defendant Liberty Builders to participate in renovating the lobby of Terminal 2 at Phoenix Sky Harbor International Airport. During the demolition phase of the work, plaintiffs were exposed to airborne asbestos dust. Plaintiffs' claims against defendants were grounded on allegations that defendants

had failed to supply safe working conditions in that they did not protect the plaintiffs from contact with the asbestos materials in the preexisting building at the airport. Plaintiffs' complaints further alleged that their exposure to asbestos resulted in compensable injuries by creating an increased risk that they would contract fatal lung diseases in the future.

While discovery was under way, defendants moved for summary judgment. Their motions primarily disputed the legal proposition that an increased risk of future physical illness or harm may constitute a present injury compensable in damages.[1] Defendants' motions for summary judgment expressly admitted, at least for purposes of the motions, that during the course of the remodeling of Terminal 2 at Sky Harbor International Airport, the plaintiffs were exposed to asbestos materials.

In support of their opposition to the motions for summary judgment, plaintiffs submitted an affidavit from Richard M. Spiegel, M.D., which stated:

While at the National Institute for Occupational Safety and Health in Cincinnati, Ohio between 1971 and 1973, I participated in research as to the effect upon people of exposure to asbestos in order to establish the federal government standards for occupational exposures; that I have conferred with counsel for the Plaintiffs in the above-entitled matter and have been advised that during the course of the remodeling of Terminal II at Sky Harbor International Airport the Plaintiffs in this matter were exposed to asbestos material; I am advised that the asbestos material to which they were exposed was in the atmosphere being breathed by them without benefit of any protective devices; it is my opinion, based upon a reasonable degree of medical certainty or probability, and based upon my experience and knowledge; that persons exposed to asbestos, as I am informed these Plaintiffs were exposed to asbestos, have an increased probabili-

ty of contracting a particularly insidious type of cancer, mesothelioma; that in my opinion persons not exposed to airborne asbestos, as these Plaintiffs have been exposed to airborne asbestos, have almost no risk of contracting mesothelioma while persons who have been exposed to airborne asbestos, as have these Plaintiffs, do have a significantly increased risk of contracting the disease. Mesothelioma is a particularly insidious and nearly always fatal disease which comes as a direct result of exposure to airborne asbestos. The disease may have been contracted by the Plaintiffs herein as a result of their exposure to airborne asbestos and there is, at this time, no way to learn if they have contracted the disease as it remains latant [sic] for ten to thirty-five years. Once it manifests itself it spreads rapidly and uncontrollably and eventually causes death.

The trial court granted defendants' motions for summary judgment, reasoning as follows:

Here, Plaintiff[s are] urging that the fact that asbestos inhalation *may* cause injury is, in itself, the injury. Present law does not reach so far.

## INCREASED RISK OF FUTURE DISEASE AS PRESENT INJURY

■ Plaintiffs contend that their exposure to airborne asbestos and the consequent increased risk of developing a fatal lung disease in the future constitute legally cognizable injuries for which they may recover damages upon proof of defendants' negligence and legal causation. We cannot agree. The weight of authority in toxic substance cases appears to hold that an increased risk of injury does not constitute a compensable harm absent some proof that actual injury is reasonably certain to occur in the future. In refusing to certify the plaintiffs' class in an action for damages based on the use of diethylstilbestrol,

1. The motions for summary judgment also argued that there existed no adequate scientific proof that exposure to asbestos would cause an increased risk of future physical harm or illness. Because we affirm the judgment for defendants, we do not consider that argument.

the court in *Morrissy v. Eli Lilly & Co.*, 76 Ill.App.3d 753, 32 Ill.Dec. 30, 394 N.E.2d 1369 (1979) stated:

> The plaintiff here ... is essentially alleging the existence of latent disease as a present injury to herself and the proposed classes. The nexus thus suggested between exposure to DES *in utero* and the possibility of developing cancer or other injurious conditions in the future is an insufficient basis on which to recognize a present injury. In Illinois, possible future damages in a personal injury action are not compensable unless reasonably certain to occur. (Citations omitted).

*Id.* at 1376 (emphasis in original). In *Laswell v. Brown*, 683 F.2d 261 (8th Cir.1982), *cert. denied*, 459 U.S. 1210, 103 S.Ct. 1205, 75 L.Ed.2d 446 (1983), the plaintiffs were the children of a serviceman who had been exposed to radiation from nuclear blasts. They founded their claim for damages on the allegation that they themselves were thereby subject to an unusually high risk of disease caused by genetically passed cellular damage. The court held that the plaintiffs failed to state a claim for relief absent an allegation that they had sustained actual harm. In *Ayers v. Jackson Township*, 189 N.J.Super. 561, 461 A.2d 184 (1983), *vacated on other grounds*, 202 N.J.Super. 106, 493 A.2d 1314 (1985), *cert. granted*, 102 N.J. 306, 508 A.2d 191 (1985), the plaintiffs alleged that the defendant had negligently contaminated the groundwater in their area with carcinogens and other poisons. The plaintiffs' experts were prepared to testify that each plaintiff had an increased risk of suffering from cancer or liver and kidney damage in the future, but could not quantify the risk or predict with any reasonable probability that the plaintiffs would actually suffer any such disease in the future. The court held that the plaintiffs could not recover for risk enhancement, stating:

> As long as the risk exposure remains within the realm of speculation, it cannot be the basis of a claim of injury against the creator of that harm.

461 A.2d at 187. *Accord Adams v. Johns–Manville Sales Corp.*, 783 F.2d 589 (5th Cir.1986) (increased risk of developing cancer from exposure to asbestos products held insufficient absent proof of a medical probability that plaintiff would develop cancer); *Herber v. Johns–Manville Corp.*, 785 F.2d 79 (3d Cir.1986) (no claim for damages for increased risk of contracting cancer in the future due to asbestos exposure); *Dartez v. Fibreboard Corp.*, 765 F.2d 456 (5th Cir.1985) (no damages for increased risk of contracting asbestosis or mesothelioma without evidence that plaintiff would contract either disease to a reasonable medical certainty); *Schweitzer v. Consol. Rail Corp.*, 758 F.2d 936 (3d Cir.), *cert. denied*, 474 U.S. 864, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985) (possible existence of sub-clinical asbestos-related harm insufficient to sustain tort claim); *Eagle–Picher Industries, Inc. v. Cox*, 481 So.2d 517 (Fla. App.1985) (damages not recoverable for future risk of cancer due to exposure to asbestos).

In the instant case, plaintiffs offered evidence establishing, at most, that they had been exposed to asbestos dust and therefore had an "increased probability" or "significantly increased risk" of developing a fatal lung disease. Plaintiffs offered no evidence that any one of them would contract such a disease to a reasonable medical probability. They accordingly failed to establish any compensable physical harm.

Plaintiffs nevertheless urge that their evidence sufficiently established a present injury under applicable Arizona case law. Again we disagree. In *Kenyon v. Hammer*, 142 Ariz. 69, 688 P.2d 961 (1984), the case on which plaintiffs primarily rely, our supreme court stated:

> When her doctor failed to administer RhoGAM within seventy-two hours of the birth of her first child, Mrs. Kenyon's physical condition changed for the worse because her ability to bear other children was significantly impaired. She became more susceptible to just those problems which later occurred in the case at bench.... Greater susceptibility to physical harm has been recognized as an element of damage in Arizona. *Southwestern Freight Lines, Ltd. v. Floyd*, 58

Ariz. 249, 264, 119 P.2d 120, 127 (1941). Certainly, if Mrs. Kenyon had known of her condition and consulted counsel shortly after the birth of her first child, an action could have been brought to recover damages for the decreased ability to bear children or the increased risk of fetal fatality. That decreased ability or increased susceptibility is damage which will sustain a cause of action in tort. *Olson v. St. Croix Valley Memorial Hospital, Inc.,* 55 Wis.2d 628, 633, 201 N.W.2d 63, 65 (1972); *see also Southwestern Freight Lines, Ltd. v. Floyd, supra; Cf., DeBoer v. Brown, supra* [138 Ariz. 168, 673 P.2d 912 (1983)] (where there was no change in condition and we found no "injury").

*Id.* at 75, 688 P.2d at 967. Despite plaintiffs' urging to the contrary, Mrs. Kenyon's "greater susceptibility" or "decreased ability" was qualitatively distinct from plaintiffs' "increased risk" of developing fatal lung disease. Mrs. Kenyon's "greater susceptibility" was an identifiable, fully developed, present medical condition. In contrast, to say that plaintiffs have an "increased risk" of developing lung disease in the future is not to denote or identify a present medical condition. Instead, the "increased risk" label merely predicts that plaintiffs' chances of developing lung disease at some unknown time in the future will be greater, to an unspecified degree, than they would normally be. Accordingly, though a cursory reading of the *Kenyon* language might appear to support plaintiffs' contention, the analogy does not withstand analysis, and *Kenyon* is inapposite here.

Plaintiffs' reliance on *Saide v. Stanton,* 135 Ariz. 76, 659 P.2d 35 (1983) and *Southwestern Freight Lines, Ltd. v. Floyd,* 58 Ariz. 249, 119 P.2d 120 (1941) is also misplaced. *Saide* merely held that reasonably probable future medical expenses in connection with an indisputable present injury are compensable. *Saide* did not address the compensability of increased risk of future harm. In *Southwestern Freight Lines,* our supreme court held that the trial court did not err in admitting testimony concerning the possible future conse-

quences of an injury, but did so not because the possibility that those consequences would occur constituted a compensable present injury, but rather because the evidence showed that they had in fact already manifested themselves.

## DAMAGES FOR MENTAL ANGUISH OVER INCREASED RISK OF FUTURE DISEASE

■ We next consider plaintiffs' contention that whether or not the increased risk of developing fatal lung disease constituted a compensable present injury, it was nevertheless a sufficient basis on which plaintiffs could recover damages for the mental anguish or "cancer-phobia" they have suffered. Alternatively, plaintiffs urge that they may predicate their claim for damages for mental anguish on their alleged need for increased medical surveillance for early detection of lung disease, or that eligibility to recover damages for reasonably foreseeable mental anguish should be held not to depend on the existence of any present physical injury. In our opinion, however, the trial court correctly determined that current law did not extend far enough to support plaintiffs' contentions. According to Prosser and Keeton, *The Law of Torts* (5th ed. 1984), the great majority of courts hold that there can be no recovery for mental disturbance unless physical injury, illness or other physical consequence accompany it, or physical harm develops as a result of the plaintiff's emotional distress. *Id.,* § 54 at 361, 363. Only a handful of courts have permitted a general negligence claim for infliction of serious emotional distress absent physical injury or illness. *Id.,* at 364–65.

Arizona adheres to the majority rule. In *Valley Nat'l Bank v. Brown,* 110 Ariz. 260, 517 P.2d 1256 (1974), our supreme court stated:

With but a few minor exceptions, the rule is that where no malice or intent is shown, no damages may be awarded for mental anguish or distress of mind. The exception to the rule occurs when it is shown that there is a physical invasion of a person or the person's security. *Lo-*

*gan v. St. Luke's General Hospital*, 65 Wash.2d 914, 400 P.2d 296 (1965). No such physical invasion occurred here.

*Id.* at 265, 517 P.2d at 1261. In the context of a claim for damages for mental anguish suffered as a result of physical harm negligently inflicted on another, the court in *Keck v. Jackson*, 122 Ariz. 114, 593 P.2d 668 (1979) adopted *Restatement (Second) of Torts* § 313:

(1) If the actor unintentionally causes emotional distress to another, he is subject to liability to the other *for resulting illness or bodily harm* if the actor (a) *should have realized that his conduct involved an unreasonable risk of causing the distress*, otherwise than by knowledge of the harm or peril of a third person, and (b) *from facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm.* (2) The rule stated in Subsection (1) has no application to illness or bodily harm of another which is caused by emotional distress arising solely from harm or peril to a third person, unless the negligence of the actor has otherwise created an unreasonable risk of bodily harm to the other.

*Id.* at 115, 593 P.2d at 669 (emphasis added). In *Wetzel v. Gulf Oil Corp.*, 455 F.2d 857 (9th Cir.1972) the Ninth Circuit predicted Arizona would also follow *Restatement (Second) of Torts* § 436A, which provides:

If the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance to another, and it results in such emotional disturbance alone, without bodily harm or other compensable damage, the actor is not liable for such emotional disturbance.

And in *Deno v. Transamerica Title Ins. Co.*, 126 Ariz. 527, 617 P.2d 35 (App.1980), we held that the plaintiffs could not recover damages for the emotional upset that they experienced as a result of a title company's mistake in describing land that plaintiffs had purchased.

■ Toxic substance cases are in general harmony with the rule that damages may not be recovered for mental anguish absent proof of some present physical harm or medically identifiable effect. *Adams v. Johns–Manville*, 783 F.2d 589; *Herber v. Johns–Manville*, 785 F.2d 79; *Gideon v. Johns–Manville Sales Corp.*, 761 F.2d 1129 (5th Cir.1985); *Mergenthaler v. Asbestos Corp. of Am.*, 480 A.2d 647 (Del.Sup.1984); *Nutt v. A.C. & S., Inc.*, 466 A.2d 18 (Del. Sup.1983), *aff'd*, 480 A.2d 647 (Del.1984); *Eagle–Picher Industries*, 481 So.2d 517; *Payton v. Abbott Laboratories*, 386 Mass. 540, 437 N.E.2d 171 (1982); *Cathcart v. Keene Industrial Insulation*, 324 Pa.Super. 123, 471 A.2d 493 (1984); *Laxton v. Orkin Exterminating Co.*, 639 S.W.2d 431 (Tenn.1982). *But see DiGiovanni v. Latimer*, 390 Mass. 265, 454 N.E.2d 483 (1983) (Liacos, J., concurring, criticizing *Payton v. Abbott Laboratories*); *Devlin v. Johns–Manville Corp.*, 495 A.2d 495, 202 N.J.Super. 556 (1985) (following minority view). Although the cases for the most part agree that recovery for mental anguish requires proof of an accompanying physical harm, they vary widely concerning the character of evidence held to be sufficient to demonstrate such harm. Thus for the courts in *Gideon, Laxton,* and *Devlin,* mere ingestion of a toxic substance was viewed as sufficient to show present physical injury. In *Adams* and *Nutt,* proof of ingestion of asbestos was held to be an insufficient basis for an award of damages for mental anguish absent proof of some existing injury or physical result. As the court stated in *Nutt:*

If it be assumed that plaintiffs can here establish a physical nexus for the origin of their claims through contact with asbestos fibers, without a physical result there is no basis to entertain their claim that a future harm will occur. These claims are thus reduced to fear of future asbestos related harm without a demonstrable physical change in bodily condition. Such a claim is not compensable.

466 A.2d at 26. Similarly, in *Jackson v. Johns–Manville Sales Corp.*, 781 F.2d 394 (5th Cir.), *cert. denied*, — U.S. ——, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986), the court stated:

In a sense, the injury in this case is the inhalation of asbestos fibers. It was not

an *actionable* injury, however, meaning it was not legally cognizable, until at least one evil *effect* of the inhalation became manifest. There was no cause of action at all, in other words, until the asbestosis appeared.

*Id.* at 412 (emphasis in original).

■ In our opinion, the view that mere ingestion of a toxic substance constitutes sufficient physical harm on which to base a claim for damages for mental anguish goes beyond the reach of current Arizona case law. Unlike plaintiffs, we do not read the reference in *Valley Nat'l Bank v. Brown,* to "physical invasion of a person or the person's security" as sufficiently broad to encompass the mere ingestion of an indeterminate quantity of a toxic substance. Neither the facts in *Valley Nat'l Bank v. Brown,* a wrongful garnishment case, nor the later decisions in *Keck v. Jackson,* and *Deno v. Transamerica Title Ins. Co.,* support such an expansive reading of that language. In the instant case plaintiffs adduced no evidence tending to establish the existence of any physical harm or medically identifiable effect from their exposure to asbestos or their associated emotional distress. Accordingly, plaintiffs failed as a matter of law to establish the prerequisite to recovering damages for that emotional distress. We must reject plaintiffs' request that we significantly liberalize or do away with the physical injury requirement. Any such holding would be exclusively within the province of the Arizona Supreme Court.

### LIABILITY FOR FUTURE INCREASED EXPENSES FOR MEDICAL SURVEILLANCE

■ We lastly address plaintiffs' contention that defendants may be held liable for plaintiffs' future costs for medical surveillance allegedly necessitated by their exposure to airborne asbestos. Assuming, without deciding, that such future medical costs could be recovered absent proof of current physical harm, *but see Schweitzer,* 758 F.2d 936 (3d Cir.), *cert. denied,* 474 U.S. 864, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985), we nevertheless conclude that plain-

tiffs failed to adduce evidence that such expenses would be reasonably necessary. Dr. Spiegel's affidavit opined that persons who are exposed to asbestos have an "increased probability" of contracting mesothelioma, which remains latent for ten to thirty-five years, and which "spreads rapidly and uncontrollably and eventually causes death" once it manifests itself. Dr. Spiegel did not suggest that persons exposed to asbestos required increased medical surveillance. We cannot agree with plaintiffs that it is a "reasonable inference" from Dr. Spiegel's affidavit that the asserted increased risk of lung disease entails any particular increase in the frequency, cost or intensity of plaintiffs' need for periodic medical examinations over what would normally have been prudent for them based on their individual circumstances. Plaintiffs presented no other admissible evidence tending to establish any such increase.

### CONCLUSION

For the foregoing reasons, we conclude that the trial court did not err in granting defendants' motions for summary judgment.

Affirmed.

CONTRERAS, P.J., concurs.

DAVIS, J. Pro Tem., specially concurring.

I fully agree with and join in the majority's disposition of appellants' contentions with respect to their stated claims for damages for increased risk of illness, and for distress attributable to cancer-phobia.

As to what I regard as a belated attempt to assert a third and independent claim for relief for expenses for periodic medical monitoring, *see Friends for All Children, Inc. v. Lockheed Aircraft Corp.,* 746 F.2d 816 (D.C.Cir.1984) and the *Ayers v. Jackson Township,* 189 N.J.Super. 561, 461 A.2d 184 (1983), *vacated on other grounds,* 202 N.J.Super. 106, 493 A.2d 1314 (1985), *cert. granted,* 102 N.J. 306, 508 A.2d 191 (1985), litigation cited in the majority opinion, my focus comes to rest on different factors.

In none of the three complaints in these actions is it alleged that the level of asbestos exposure was such that special medical monitoring on an annual or other periodic basis is reasonably necessary according to acceptable medical standards, or even appropriate. Nor is the subject even specifically addressed in the prayers to the complaints.

While we must accord a complaint a liberal construction, in a lawsuit which counsel characterizes as "extremely complicated" the basis of a claim for such distinctive relief should be in some manner explicitly set forth. Inasmuch as it was not, I believe the trial court simply and properly granted summary judgment as requested on the two claims that were effectively stated.

NOTE: The Honorable Richard M. Davis, Judge *pro tempore* has been authorized to participate in this matter by the Chief Justice of the Arizona Supreme Court, pursuant to Arizona Const. art. VI, § 20.