840 P.2d 288

TRANSAMERICA INSURANCE COM-
PANY, a California corporation,
Plaintiff-Appellee,

v.

John and Jane DOE, Defendants–
Appellants.

No. 1 CA–CV 90–456.

Court of Appeals of Arizona,
Division 1, Department E.

April 28, 1992.

Review Denied Dec. 1, 1992.

Gallagher & Kennedy, P.A. by Kevin E.
O'Malley, Phoenix, for plaintiff-appellee.

Gage & Mathers, Ltd. by G. David Gage,
Phoenix, for defendants-appellants.

## OPINION

McGREGOR, Judge.

John and Jane Doe[1] (appellants) gave
emergency medical assistance to victims of
a car accident and, as a result, were ex-
posed to blood infected with the human
immunodeficiency virus (HIV). On appeal,
appellants challenge the trial court's deter-
mination that exposure to the virus and
subsequent diagnostic testing did not con-
stitute bodily injury and therefore were not
compensable under the underinsured mo-
torist provision of their motor vehicle liabil-
ity insurance policy issued by Transamerica
Insurance Company (Transamerica). Ap-
pellants also contend the trial court should
have referred this coverage dispute to an
arbitration panel. We conclude the cover-
age dispute does not fall within the insur-
ance policy's arbitration provision and af-
firm the trial court's judgment in favor of
Transamerica.

### I.

Appellants are trained medical profes-
sionals who witnessed a single-car accident
in which two passengers were ejected from

1. By stipulation of the parties, the defendants-
appellants used a fictitious name to protect their
privacy.

the car. Appellants, the first parties not involved in the accident to arrive at the scene, observed the passengers bleeding and needing emergency medical attention. In the course of rendering cardiopulmonary resuscitation and other life-sustaining procedures, appellants came into direct contact with the passengers' blood. Both appellants had open skin lesions at the area of the blood contact.

Five days after the accident, authorities informed appellants that one passenger, who died from accident injuries, had been infected with HIV, which causes acquired immune deficiency syndrome (AIDS). Appellants therefore had been exposed to HIV-infected blood while providing medical treatment. Consequently, appellants underwent approximately one year of diagnostic testing, which required periodically drawing blood samples by means of a syringe and hypodermic needle, to determine whether appellants had been infected with the virus. The blood tests did not reveal the presence of the virus, and appellants' physician has deemed further testing unnecessary. Nevertheless, appellants cannot be absolutely certain they will not contract AIDS from exposure to the passenger's blood.

The car driver's reckless acts caused the accident. The driver's liability insurer paid the full amount of his coverage to the passengers and their survivors. The parties agree that, with respect to appellants, the driver therefore was an underinsured motorist.

Transamerica had issued appellants a motor vehicle insurance policy that was in effect on the date of the accident. The policy provides underinsured motorist coverage according to the following terms:

UNDERINSURED MOTORISTS COVERAGE: We will pay damages which a covered person is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of *bodily injury* sustained by a covered person and caused by an accident. The owner's or operator's liability for these damages must arise out of the owner-

ship, maintenance or use of the underinsured motor vehicle. (Emphasis added.)

Appellants claimed to have sustained bodily injury and damages, including anxiety and emotional distress, from exposure to blood infected with HIV and sought compensation from Transamerica under their underinsured motorist coverage. When Transamerica denied their claim, appellants made a written demand for arbitration.

Transamerica initiated this action by filing a complaint for declaratory relief, arguing that appellants did not suffer a compensable "bodily injury" and that appellants' injuries did not arise out of the ownership, maintenance or use of the underinsured motor vehicle. Transamerica further contended the court, rather than an arbitration panel, provided the proper forum to decide the question of available coverage.

Transamerica and appellants filed cross-motions for summary judgment. Relying on appellants' statement of facts, which Transamerica accepted for purposes of the pending motions, the trial court granted summary judgment in favor of Transamerica and subsequently denied appellants' motion for a new trial. Appellants timely appealed. We have jurisdiction pursuant to Ariz.Rev.Stat.Ann. § 12–2101.B and F.1.

## II.

We first consider whether the policy required Transamerica to agree to arbitrate the coverage issue. The Transamerica policy provides:

ARBITRATION: If we and a covered person disagree whether that person is legally entitled to recover damages from the owners or operator of an underinsured motor vehicle, or do not agree as to the amount of damages, either party may make a written demand for arbitration. . . .

. . . .

. . . A decision agreed to by two of the [three] arbitrators will be binding as to:
1. Whether the covered person is legally entitled to recover damages; and

2. The amount of damages....

Appellants assert this policy provision entitles them to arbitration of all disputed issues related to coverage, liability and damages. We disagree.

■ An arbitrator cannot resolve issues outside the scope of the arbitration agreement. *Allstate Ins. Co. v. Cook,* 21 Ariz.App. 313, 315, 519 P.2d 66, 68 (1974). Appellants' Transamerica policy permits an arbitration panel to resolve disputed issues pertaining to owner/operator liability or the amount of damages. Neither of these is at issue here. Instead, this case turns upon appellants' right to recover from their own insurer, an issue that is not made arbitrable by the terms of the underinsured motorist policy. *See id.* (arbitrator exceeded his jurisdiction by ruling on insured's right to recover from insurer pursuant to identical arbitration provision). Therefore, we affirm the trial court's determination that the dispute involved in the present case falls outside the policy's arbitration provisions.

### III.

Appellants' principal argument is that, because appellants are entitled to recover for damages according to the terms of their Transamerica policy, the trial court erred in granting Transamerica's motion for summary judgment. In reviewing a summary judgment, we view the evidence in a light most favorable to the losing party, giving that party the benefit of all favorable inferences that may be reasonably drawn from the evidence. *Wisener v. State,* 123 Ariz. 148, 149, 598 P.2d 511, 512 (1979). If, when viewed in this manner, reasonable people could differ, summary judgment is not appropriate. *Orme School v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000,

1008 (1990). Additionally, the decision to grant or deny a motion for a new trial falls within the sound discretion of the trial court and we will not upset its ruling absent a clear showing of abuse of discretion. *Adroit Supply Co. v. Electric Mut. Liab. Ins. Co.,* 112 Ariz. 385, 389, 542 P.2d 810, 814 (1975).

■ Appellants' underinsured motorist coverage indemnifies them against damages they are "legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury ... caused by an accident." Appellants reason that, by virtue of the "rescue doctrine," [2] the underinsured driver owed appellants, as rescuers, an independent duty of care that entitled them to compensation for damages suffered in their attempted rescue of the injured passengers. We assume, without deciding, that appellants could have recovered against the negligent driver. Appellants' ability to do so, however, fulfills only the first of the three conditions imposed to entitle appellants to underinsured motorist coverage. Under the terms of the policy, appellants also must establish they are legally entitled to recover from the negligent driver *because of* bodily injury *caused by* the accident. Although principles of tort law govern appellants' right to recover against the negligent driver, the terms of appellants' Transamerica policy govern appellants' right to recover against their insurer. We proceed, therefore, to consider whether appellants suffered bodily injury according to their policy terms.[3]

### A.

Appellants first contend they sustained bodily injury as a result of their physical

---

2. Under the "rescue doctrine," the party who creates a dangerous situation is not relieved from liability by rescue attempts undertaken to protect the personal safety of another. Even if the negligent party's original actions endangered no one but himself, he owes the rescuer an independent duty of care and is liable for any injuries the rescuer suffers as a result of the rescue attempt. W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 44, at 307–08 (5th ed. 1984).

3. Because we find the issue of bodily injury dispositive, we do not consider Transamerica's argument that any alleged injuries appellants may have suffered were not caused by the accident and did not arise "out of the ownership, maintenance or use of the underinsured motor vehicle," as required by the terms of the policy.

exposure to the infected blood of the passenger. Appellants' Transamerica policy does not define the term "bodily injury." Because the term is not ambiguous on its face, we interpret it according to its ordinary meaning. *See Mid–Century Ins. Co. v. Duzykowski*, 131 Ariz. 428, 430, 641 P.2d 1272, 1274 (1982). In insurance law, the term "bodily injury" is narrower and more restrictive than "personal injury." *Allstate Ins. Co. v. Diamant*, 401 Mass. 654, 518 N.E.2d 1154, 1156 (1988). Bodily injury encompasses only physical injuries, impairment of physical condition, sickness, disease, or substantial pain. *See, e.g., Rolette County v. Western Casualty and Sur. Co.*, 452 F.Supp. 125, 129–30 (D.N.D. 1978); *Allstate*, 518 N.E.2d at 1156; *Commonwealth of Pennsylvania v. Goins*, 348 Pa.Super. 22, 501 A.2d 279, 280 (1985); *1A Appleman's Insurance Law and Practice*, § 354 (rev. ed. 1981). Although this court has not considered whether physical exposure to HIV-infected blood constitutes a bodily injury for purposes of insurance coverage, we have twice recently considered the closely related question whether exposure to asbestos that increases the risk of asbestosis or lung cancer constitutes bodily injury or damage sufficient to support a tort cause of action.

In *Burns v. Jaquays Mining Corp.*, 156 Ariz. 375, 376–77, 752 P.2d 28, 29–30 (App. 1988), the plaintiffs, who resided in a mobile home park adjacent to an asbestos mill and tailings pile, were exposed to substantial quantities of airborne asbestos fiber. *DeStories v. City of Phoenix*, 154 Ariz. 604, 605, 744 P.2d 705, 706 (App.1987), involved plaintiffs who were construction workers exposed to airborne asbestos while renovating Terminal 2 at Phoenix Sky Harbor International Airport. Although the plaintiffs in *Burns* established they had asbestos fiber in their lungs, and the plaintiffs in *DeStories* established they were exposed to asbestos fiber, none had been diagnosed as suffering asbestosis or lung cancer. Nevertheless, the plaintiffs sought to recover damages for "the increased risk of developing cancer or other asbestos-related diseases...." *Burns*, 156 Ariz. at

377, 752 P.2d at 30; *see DeStories*, 154 Ariz. at 606–07, 744 P.2d at 707–08.

In both *Burns* and *DeStories*, this court affirmed entry of summary judgment in favor of the defendants. In *Burns*, we concluded the presence of asbestos fibers in the plaintiffs' lungs was not alone proof of bodily injury or the manifestation of a bodily injury and held: "There can be no claim for damages for the fear of contracting asbestos-related diseases in the future without the manifestation of a bodily injury." 156 Ariz. at 378, 752 P.2d at 31. Similarly, in *DeStories*, we held that no compensable physical injury resulted from exposure to asbestos sufficient to create an "increased probability" or "significantly increased risk" of developing a fatal lung disease. 154 Ariz. at 607, 744 P.2d at 708. We reasoned that to allow recovery for mere exposure to asbestos would result in highly speculative proof of damages and would disadvantage both plaintiffs and defendants. Permitting an action for damages and recovery after exposure but prior to manifestation of a bodily injury could result in windfalls to healthy plaintiffs who never manifest injury and insufficient compensation for those who do. *Burns*, 156 Ariz. at 377, 752 P.2d at 30.

The reasoning of *Burns* and *DeStories* applies directly here. Appellants were exposed not to asbestos fibers in their environment but to blood infected with the AIDS virus through their contact with the passenger's blood. These appellants, like the plaintiffs in *Burns* and *DeStories*, offer "no competent evidence of any physical impairment or harm caused by this exposure." *Burns*, 156 Ariz. at 377, 752 P.2d at 30. Appellants therefore have not sustained any compensable bodily injury within the meaning of the Transamerica policy as a result of their exposure to the passenger's infected blood, as they have suffered no physical injury, sickness, disease, or substantial pain as a direct result of exposure to the virus.

**B.**

Appellants also argue that, even if exposure to the infected blood was not bodily

injury, the physical invasion of their bodies involved in drawing blood for AIDS testing comprised a bodily injury. Appellants have provided no authority to support the proposition that a litigant can transform the threat of future harm into present bodily injury by undergoing common diagnostic testing, and we are aware of no such authority. We could conclude that diagnostic testing, utilized to determine whether bodily injury occurred, is itself bodily injury only by extending the meaning of "bodily injury" far beyond its accepted bounds.[4] Such a conclusion would invite the very inequities to both plaintiffs and defendants that we avoid by requiring manifestation of bodily injury, rather than exposure to a threat of future injury, to support a claim for damages resulting from bodily injury. We therefore decline to expand the meaning of "bodily injury" to encompass common diagnostic testing intended to determine whether bodily injury occurred.

### C.

Finally, appellants argue they are entitled to compensation for anxiety and emotional distress resulting from exposure to and fear of contracting AIDS. Both the terms of appellants' policy and prior Arizona decisions require bodily injury as a prerequisite to compensation for emotional distress. *Keck v. Jackson,* 122 Ariz. 114, 115, 593 P.2d 668, 669 (1979); *see Ball v. Prentice,* 162 Ariz. 150, 152, 781 P.2d 628, 630 (App.1989). We have already determined that appellants' exposure to HIV-infected blood and subsequent testing do not constitute bodily injury under the terms of this policy. Moreover, bodily injury under these facts does not "include damages for grief, anguish, loss to society, loss of companionship or loss of support." *Green v. Mid–America Preferred Ins. Co.,* 156 Ariz. 265, 268, 751 P.2d 581, 584 (App. 1987). Appellants' failure to adduce evidence "tending to establish the existence of

any physical harm or medically identifiable effect from their exposure" to a disease requires a finding that, as a matter of law, the necessary prerequisite for recovering damages for emotional distress is lacking. *DeStories,* 154 Ariz. at 610, 744 P.2d at 711. Therefore, appellants are not entitled to compensation for damages due to emotional distress under the terms of their Transamerica policy.

### IV.

■ Although appellants have not yet sustained a bodily injury from exposure to the infected blood, this opinion does not foreclose future suit if appellants contract the virus as a result of this incident. Arizona follows the "discovery rule" with respect to the statute of limitations for personal injuries. *See DeBoer v. Brown,* 138 Ariz. 168, 170–71, 673 P.2d 912, 914–15 (1983); *Burns,* 156 Ariz. at 378, 752 P.2d at 31. The statute of limitations does not begin to run until the disease or physical injury becomes manifest. *Burns,* 156 Ariz. at 378, 752 P.2d at 31. Therefore, should appellants sustain bodily injury as a result of exposure to the infected blood of this injured passenger, the statute of limitations will begin to run at the time they know or should know of the injury. If appellants then refile their action, Transamerica may raise those defenses not resolved in this proceeding.

### V.

For the foregoing reasons, we affirm the trial court's orders granting Transamerica's motion for summary judgment and denying appellants' motion for a new trial.

FIDEL, P.J., and GRANT, J., concur.

---

4. We previously have recognized that recovery of damages for the costs of medical testing and surveillance reasonably necessary to the diagnosis and treatment of latent injuries or disease can be a component of a tort action against the party causing the injury or disease. *Burns v. Jaquays Mining Corp.,* 156 Ariz. 375, 380, 752

P.2d 28, 33 (App.1988). *Accord Ayers v. Township of Jackson,* 106 N.J. 557, 525 A.2d 287, 312 (1987). We do not intend to retreat from that position. The outcome of this action, however, depends upon the terms of the insurance policy rather than upon tort principles.